**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Angela Breasher McFERRON,**
**Defendant–Appellant.**

No. 97–5161.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 5, 1998.

Decided Dec. 29, 1998.

Joseph C. Murphy, Jr., Asst. U.S. Attorney (argued and briefed), Veronica A. Coleman (briefed), Office of U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

Angela Breasher McFerron, pro se, Federal Medical Center, Lexington, KY, Gary W. Lanker (argued and briefed), Law Office of Gary W. Lanker, Memphis, TN, for Defendant–Appellant.

Before: KEITH, BATCHELDER, and COLE, Circuit Judges.

**OPINION**

COLE, Circuit Judge.

Defendant–Appellant Angela Breasher McFerron ("McFerron") challenges her 18 U.S.C. § 1623 conviction for perjury on the basis of the district court's disposition of the government's *Batson* challenges, raised in response to McFerron's peremptory challenges to five white males on the venire panel. For the reasons that follow, we reverse McFerron's conviction and remand for a new trial.

**I.**

On September 6, 1995, McFerron's husband, Kevin McFerron was tried in federal court on charges of drug trafficking and firearms violations. During the investigation of that case, authorities learned that McFerron approached Stephanie Johnson, a witness scheduled to testify in Kevin's trial, and asked that Johnson give false exculpatory testimony. Subsequently, authorities tape-recorded a telephone conversation between McFerron and Johnson in which McFerron requested that Johnson give false testimony.

At Kevin's trial, McFerron testified. The government asked her if she had asked anyone to lie at Kevin's trial. McFerron responded negatively. Thereafter, a federal grand jury charged McFerron with one count of perjury in violation of 18 U.S.C. § 1623. McFerron went to trial and the jury was unable to reach a unanimous decision. The district court thereupon declared a mistrial.

Jury selection in McFerron's second trial began on October 9, 1996. McFerron, an African–American woman, exercised seven of her ten peremptory challenges on white males. The government objected under Batson[1] that McFerron was using her challenges in a discriminatory manner to systematically exclude white males from the jury.[2] The government specifically objected to McFerron's use of peremptory challenges against five of the white males.[3]

The district court conducted a Batson hearing at which time it determined that the government established a prima facie case that McFerron was exercising her peremptory challenges in a purposefully discriminatory fashion.[4] McFerron was then required to set forth nondiscriminatory reasons for the challenges with respect to the venire members against whom the government brought Batson challenges.

Regarding the first prospective juror, McFerron stated that she

> just felt he would be ultra conservative and that his conservativeness rather than anything else would make him tend to lean more toward the government and have a tendency to associate himself more with the government and maybe not be as unbiased ... [and] based on his position as a physician, a lot of people tend to believe physicians, that he might be able to sway

people to believe whatever his opinion was more than an ordinary person.

As to the second venire member at issue, McFerron offered that "there was something he said about being an alternative [juror] in a criminal murder trial ... there was something in the tone of his voice about that I thought he was possibly extremely conservative ... I just got a feeling from him that he would not be able to be as impartial as other jurors." As to the third challenged venireperson, McFerron explained that "he had a military background, which in my experience ... makes people see kind of black and white ... and he might be quick to make a judgment call on that account. His military background being somewhat the same as police type work." Regarding the fourth challenged venireperson, McFerron stated that "the fact that he's from Ripley, Tennessee, basically, maybe not as exposed to [an] urban type environment would also make him see things more simplistically and be less willing to be open-minded about the issues in this case." As to the last venireperson at issue, McFerron stated that "he seemed urgent to get this over with and back to work, ... that could be a real detriment when it comes time for the jury to deliberate if he is anxious to get out and willing to change his mind if that will get him out quicker."

The district court then considered each of the articulated reasons expressed above as they related to each of the challenged venirepersons. As to the first venireperson, the district court rejected the defense's proffered reason, stating, "the party whose peremptory challenge has been objected to under Batson ... has failed in her burden of persuasion regarding a nondiscriminatory basis for assertion of peremptory challenge ..." (em-

---

1. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny prohibit the discriminatory exercise of peremptory challenges on the basis of race or gender in violation of the Equal Protection Clause.

2. It is not entirely clear whether the government's challenges were based on race, gender or both. The district court, however, focused on discrimination in the form of gender bias.

3. The government conceded that McFerron set forth nondiscriminatory reasons for peremptory challenges as to two of the white males.

4. The district court stated:

> [W]e have changed the character of the jury in this process. We now have many more females than males, and we have somewhat more blacks than whites, and we have basically gotten rid of any white males deliberating on the jury. We have no white males deliberating on the jury and we started out with—and we only have one male deliberating on the jury, and we started out with basically almost 50/50 balance, so, [the government] has met its burden of proof in demonstrating that there is certainly a prima facie case in this situation.

phasis added). The district court rejected the other proffered reasons in much the same way, stating as to the second prospective juror: "[I]t appears that the use of the analysis that he was extremely conservative without any basis really for that is simply a code word or maybe a code word [for males], [and] appears to be not *very persuasive* to the court ... [McFerron] has *failed in her burden of persuasion* regarding a nondiscriminatory basis for assertion of a peremptory challenge." (emphasis added). The district court also rejected the asserted reason as to the third challenged venireperson, stating that "if you choose military experience of people of [the venireperson]'s age, you will naturally exclude many males and almost no females, so it is a code word for male and, therefore, could not be accepted as a legitimate nondiscriminatory reason for excluding him.... [McFerron] has failed in her *burden of persuasion.*" (emphasis added). In addition, the district court rejected the reason proffered regarding the fourth challenged venireperson because it failed "to have a factual basis in the record.... It says that he would see things more simplistically. That, again, appears to be a code word to exclude males in this case.... [McFerron] has failed ... on her *burden of persuasion* regarding nondiscriminatory basis for assertion of a peremptory challenge." (emphasis added). As to the last venireperson at issue, the district court explained that McFerron carried the burden of persuasion and that she had not persuaded the court that the venireperson actually had an urgency to end jury duty and return to activities at his place of employment. In sum then, the district court rejected McFerron's proffered reasons as to all five of the challenged venirepersons on the basis that McFerron failed to meet her burden of persuasion. The district court then seated the five venire members against whom McFerron had attempted to exercise peremptory challenges.

Following trial, the jury convicted McFerron and the district court subsequently sentenced her to a five-year term of imprisonment. McFerron then appealed to this court, contending reversible error in the district court's resolution of the government's *Batson* challenges to the venire panel.

## II.

### A.

McFerron argues that the district court committed reversible error in regard to its handling of the government's *Batson* claims. Specifically, McFerron contends that the district court committed legal error in imposing on her a burden of persuasion as to the validity of her peremptory strikes when the Supreme Court has required only that she present a facially valid, race-neutral explanation for exercising such a strike.

In determining whether a party has committed a *Batson*-type violation in its exercise of a peremptory challenge, the Supreme Court has explained that a district court must follow a three-step process.[5]

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful discrimination.

*Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).[6] McFerron contends that under this three-step evaluation, the burden of persuasion rests with—and never shifts from—the opponent of a peremptory strike. She argues that in order to rebut a finding of a prima facie case of discriminatory intent, the proponent of the

---

**5.** In *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Supreme Court extended *Batson* 's holding to situations in which a criminal defendant, as opposed to the prosecution, exercises peremptory challenges in a discriminatory manner so that prosecutors may challenge a criminal defendant's use of challenges in violation of equal protection.

**6.** In *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the Supreme Court extended *Batson* to gender-based peremptory challenges. The described three-step evaluation applies with equal force to *Batson* challenges based on race or gender.

strike need only present a facially neutral explanation that is not violative of equal protection principles, and she did so. McFerron thus argues that the district court erred in imposing on her a burden of persuasion, because persuasion must be established by the government in the final step of the three-step process, in which the government must show purposeful discrimination by a preponderance of the evidence. The government counters that the district court did not err in its disposition of the *Batson* challenges and, even if it did, such error was harmless.

## B.

■ The Supreme Court has provided a clear answer to the question presented by McFerron's appeal. In *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769, the Court decided that the lower court erred by combining *Batson*'s second and third steps into one step and requiring that the justification tendered at the second step not only be neutral, but also "at least minimally persuasive." *Id.* Likewise, we conclude that the district court erred in this case by consolidating the second and third steps of the *Batson* analysis and imposing the burden of persuasion on McFerron. The Supreme Court has explained that when it established the requirement that the proponent of a strike give a "clear and reasonably specific" explanation of the legitimate reasons for exercising a peremptory challenge, *Batson,* 476 U.S. at 98 n. 20 106 S.Ct. 1712 (citation and quotation omitted), it was not requiring "a reason that makes sense, but a reason that does not deny equal protection." *Purkett,* 514 U.S. at 769, 115 S.Ct. 1769. Accordingly, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the [ ] explanation. Unless a discriminatory intent is inherent in the [ ] explanation, the reason offered will be deemed [ ] neutral.'" *Id.* at 767–68, 115 S.Ct. 1769 (citations omitted).

■ Because the Court has explained that the neutral justification need only be facially valid and not persuasive, the district court erred by imposing a burden of persuasion on McFerron and evaluating her proffered explanations by such a test. "It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* at 768, 115 S.Ct. 1769. Only when deciding whether the opponent of a strike has proved purposeful discrimination may a court consider the persuasiveness of the purported justification and choose to disregard an explanation that is, for example, implausible, silly or superstitious and may thus be a pretext for purposeful discrimination. *Id.*

As McFerron's proffered reasons in this case were not facially discriminatory, *see e.g., United States v. Tucker,* 90 F.3d 1135, 1142 (6th Cir.1996) (upholding challenge to prospective juror deemed "too unintelligent and disinterested" to serve), the district court clearly erred by not proceeding to step three of the *Batson* analysis. As the Supreme Court has explained, "the ultimate burden of persuasion regarding [discriminatory] motivation rests with, and never shifts from, the opponent of the strike." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769. Here, the district court failed to put the government to its burden.

## C.

■ The government contends that even if the district court committed error, we should consider such an error harmless. This suggestion has been resoundingly rejected by every circuit court that has considered the issue. *See United States v. Hall,* 152 F.3d 381, 408 (5th Cir.1998) (noting circuit's holding that doctrine of harmless error does not apply to denial or impairment of right to exercise peremptory challenges); *Tankleff v. Senkowski,* 135 F.3d 235, 248 (2d Cir.1998) (holding that harmless error analysis is inappropriate for *Batson* errors); *United States v. Underwood,* 122 F.3d 389, 392 (7th Cir. 1997) (rejecting harmless error analysis where a defendant's right to peremptory challenge has been denied or impaired), *cert. denied,* —— U.S. ——, 118 S.Ct. 2341, 141 L.Ed.2d 713 (1998); *United States v. Annigoni,* 96 F.3d 1132, 1143 (9th Cir.1996) (en banc) (holding that erroneous denial of criminal defendant's peremptory challenge requires automatic reversal and rejecting possibility of harmless error analysis); *Ford v.*

*Norris,* 67 F.3d 162, 170 (8th Cir.1995) (holding *Batson* error not amenable to harmless error review); *cf. Kirk v. Raymark Indus., Inc.,* 61 F.3d 147, 159 (3d Cir.1995) (holding that remedy for impairment or denial of right to peremptory challenges is per se reversal).

Likewise, we reject the application of harmless error analysis to the denial of a right to exercise peremptory challenges. This type of error involves a "structural error," which is not subject to harmless error analysis. *See Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In *Fulminante,* the Supreme Court distinguished between "trial errors" which are subject to harmless error review and "structural errors" which are not. The Court defined trial errors as those "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08, 111 S.Ct. 1246. In contrast, structural errors, such as the erroneous denial of a peremptory challenge, affect the "entire conduct of the trial from beginning to end." *Id.* at 309, 111 S.Ct. 1246. Moreover, on a practical note, it would be virtually impossible to determine whether the erroneous denial of a peremptory challenge was harmless enough to warrant affirming a conviction.

Accordingly, we find that harmless error analysis is not applicable to the district court's erroneous application of the three-step *Batson* test and the improper denial of McFerron's peremptory challenges.

## CONCLUSION

For the foregoing reasons, we REVERSE the judgment of conviction and REMAND for a new trial.