KELLY, J.
(dissenting). I dissent from the lead opinion for two reasons. First, the trial judge erred by failing to follow the procedures required by Batson v Kentucky, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986). Despite the lead opinion’s contention to the contrary, the Bat-son errors were incurable. Second, the lead opinion’s dictum regarding Miller[1] is inappropriate, and, as dictum, has no legal effect or precedential value. There is no legal basis to overrule Miller.
I. THE BATSON RULE
The United States Supreme Court ruled in Batson that, when selecting a jury, a prosecutor may not use a peremptory challenge to remove a juror because of the juror’s race. Batson, supra at 89. The Supreme Court gave trial judges a specific three-step procedure to determine whether a peremptory challenge has an improper racial basis.
First, the objecting party must make a prima facie showing, based on the totality of all relevant circumstances, that the other party discriminated in removing the juror. Id. at 93-94. Second, the party exercising the peremptory challenge must give a neutral explanation for the removal, showing that it was not based on race. *304 Id. at 94, 97. Third, the trial judge must determine if the objecting party established purposeful discrimination. Id. at 98.
Although Batson dealt with a prosecutor’s exercise of peremptory challenges, the Supreme Court extended the rule in later cases. For example, in Georgia v McCollum,[2] it stated that the United States Constitution prohibits a criminal defendant from engaging in purposeful discrimination in the exercise of peremptory challenges.
A. THE PEREMPTORY CHALLENGES
In this case, each party had made several peremptory challenges before defense counsel challenged Juror No. 10. During voir dire, Juror No. 10 stated that he was a close friend of several police officers, including a “chief.” He stated that he “wouldn’t think” that his friendships would make a difference in his ability to make a fair decision. He also responded, when asked if he would feel obliged to apologize should he vote to acquit defendant, that he “hope[d] not.”
When defense counsel peremptorily challenged Juror No. 10, the trial judge disallowed the challenge because, he said, it and previous defense challenges were based on race. Defense counsel asked to comment, but the judge refused him the opportunity. Counsel then boisterously objected to the refusal, stating that it was “garbage.” The judge then relented and allowed a statement.
Defense counsel argued that he had not attempted to eliminate Juror No. 10, a Caucasian male, because of his race. He pointed out that the Caucasians on the jury outnumbered and exceeded the minorities on the panel. *305 The judge then allowed the prosecution to respond, refused to hear more from defense counsel, and ruled that Juror No. 10 would remain on the jury.
Jury selection continued, and the attorneys made more peremptory challenges. When Juror No. 5 was called, neither side objected for cause, and the prosecution did not exercise a peremptory challenge. Without asking for defense counsel’s input, the judge stated, “We have a jury.”
Defense counsel approached the bench and an off-the-record discussion ensued. When the proceeding resumed on the record, defense counsel asked to excuse Juror No. 5. The prosecution objected, stating that it was making a Batson objection to the defense’s peremptory challenge of Juror No. 5.
Without discussion or input from the parties, the judge disallowed the peremptory challenge for the same reasons he had given regarding Juror No. 10., Again, defense counsel sought to comment on the ruling but was refused. After the prosecution evidenced some discomfort with the lack of a record, the judge allowed counsel to make a record outside the presence of the jury.
The prosecutor then observed that the two jurors excused between Juror No. 10 and Juror No. 5 were both Caucasian males. She also indicated that Juror No. 5 was a Caucasian male. She offered no additional basis for her objection to the peremptory challenge of Juror No. 5.
Defense counsel pointed out that there had been no discriminatory pattern to his challenges. He stated that at least as many white males as minority males remained on the jury. He insisted that there were valid reasons to remove the intervening jurors who were excused. One had expressed bias towards police officers. *306 The other, years before, had resided on the street where the crime was alleged to have occurred, and his home had been broken into. The juror expressed concern about the influence the break-in would have on his decision in this case.
The judge stated that defense counsel’s argument was unpersuasive. Without making further rulings, he brought back the jury, and the trial continued.
B. THE TRIAL COURT’S FAILURE TO FOLLOW THE BATSON PROCEDURES
The judge failed to follow the three-step procedure required by Batson. In fact, he failed to complete a single step of the procedure. He did not make a finding regarding whether there had been a prima facie showing of purposeful discrimination. Instead, it appears that he lumped all three steps into one and made his ruling without further regard to Batson.
Trial judges are not at liberty to disregard the Batson procedure. Batson is United States Supreme Court precedent that is binding on state courts. Moreover, the courts may neither ignore one step nor combine the three steps of Batson. Purkett v Elem, 514 US 765, 768; 115 S Ct 1769; 131 L Ed 2d 834 (1995). Instead, they must carefully and individually consider each. The Batson procedure was designed to carefully balance the free exercise of peremptory challenges and the evils of racial discrimination in the selection of jurors. Batson, supra at 98-99. It was crafted specifically to enforce the mandate of equal protection as well as to further the ends of justice. Id. at 99.
In this case, when the trial judge allowed defense counsel to speak, he erroneously placed the burden on counsel to show that the peremptory challenge should not be disallowed. Although Batson provides a burden- *307 shifting procedure, the party objecting to a peremptory challenge, in this case the prosecutor, has the ultimate burden of proving purposeful discrimination. Purkett, supra at 768. Improperly shifting the burden “violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.” Id. Therefore, the trial court erred twice in disallowing the peremptory challenges to Jurors No. 5 and No. 10.
The trial court was required to make a ruling on the first step. The court’s failure to arrive at a clear conclusion and articulate its findings amounted to error in and of itself. Only if, and when, a trial court concludes that a prima facie case exists does the burden shift to the party exercising the peremptory challenge. Then the trial court must allow that party to articulate race-neutral reasons for the challenge.
In this case, the trial court glossed over the first step, skipped the second step, and jumped to the third. At the third step, the court impermissibly placed on defendant the burden to rebut presumed racial prejudice. These multiple and repeated errors are patently inconsistent with the established Batson precedent. They cannot remain uncorrected.
Those on the lead opinion state that their “research”[3] reflects that trial courts often fail to comply with Batson. They appear to believe that, because there is a supposed generalized failure of compliance, the seriousness of the trial court’s Batson errors here is diminished. But an error often repeated is no less an error. In fact, what we should draw from their research is that we must more scrupulously hold our courts responsible *308 for following Batson. The United States Supreme Court has carefully laid out the steps necessary for determining if a Batson error exists. It is for us to see that they are followed.
C. THE TRIAL COURT DID NOT CURE THE ERRORS
The lead opinion concludes that the trial court cured its errors by allowing defense counsel to respond to its ruling. Those on the lead opinion attempt to fit the facts of this case into Batson, rather than apply Batson to the facts. They conclude that defense counsel should have used his opportunity to respond to offer race-neutral reasons for the peremptory challenges. The record does not support this conclusion.
The trial court never articulated that a prima facie case of discrimination had been made. Therefore, when it allowed defense counsel to speak, counsel dwelt on the first Batson element. He denied the existence of a discriminatory pattern in his peremptory challenges. It appears that he was encouraging the court to refocus and follow the Batson procedure. Given that the court had not completed the first step oí Batson, it was wholly reasonable for defense counsel to direct his comments to that step. And he did just that.
The lead opinion concludes that defense counsel should have surmised that the judge was ignoring Batson and tailored his answers accordingly.[4] This un *309 fairly holds defendant responsible for alleviating the court’s error. Trial courts have a clear map to follow in Batson cases. Given the magnitude of the error when they fail in that endeavor, it is imperative that we hold courts responsible for correctly applying the Batson test. Batson, supra at 99; Purkett, supra at 768.
The lead opinion concludes that defense counsel should have supplied a race-neutral reason for the challenges. However, a good reason exists why he did not respond. The court never asked for a response and never gave counsel an opportunity to offer one. Instead, after concluding discussion on what should have been the first step of Batson, the judge stopped counsel and overruled his challenges. This was clearly erroneous. The judge was required to ask specifically for race-neutral responses pursuant to the second Batson step. Batson, supra at 94, 97.
Instead of that, the judge combined all the Batson steps into one and placed the burden on defendant to counter his erroneous ruling. It is impermissible to shift the burden in this manner. Purkett, supra at 768. Given that shifting the burden is error in itself, it cannot constitute a cure for the judge’s other errors as the lead opinion concludes.
The lead opinion states, “Even if the trial court’s prima facie findings were inadequate, that inadequacy would not be outcome determinative because defendant subsequently offered an explanation for his challenges.” Ante at 296. As noted above, this simply did not happen. Defense counsel’s comments were directed to the first Batson step. Being that a prima facie case was never established, the burden never shifted to defendant, and he was not required to offer race-neutral reasons. Hence, the court’s failure must have been outcome determinative.
*310 The lead opinion attempts to support its position by quoting Hernandez v New York, 500 US 352,359; 111 S Ct 1859; 114 L Ed 2d 395 (1991). But this reliance is misplaced. First, the quotation is drawn from a plurahty opinion that, under the doctrine of stare decisis, is not binding. Negri v Slotkin, 397 Mich 105, 109; 244 NW2d 98 (1976).
Second, the quotation is taken out of context. One has only to read the sentence above it to understand the Supreme Court’s true meaning. It quotes a Title VII civil rights case: “ ‘[WJhere the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.’ ” Hernandez, supra at 359, quoting United States Postal Service Bd of Governors v Aikens, 460 US 711, 715; 103 S Ct 1478; 75 L Ed 2d 403 (1983). The Supreme Court plurahty in no place states that, as long as a court rules on Batson’s third step, the first step can be ignored. Rather, it observes that a defendant may concede the first Batson step by moving the discussion to the second step. This is a far cry from what the lead opinion claims Hernandez stands for.
But even if this section of Hernandez were controlling precedent, it would not apply to this case. Here, defendant did not concede the first Batson step. Instead, counsel’s comments were specifically directed at rebutting the claim of a prima facie case. It was not defendant who moved the process beyond the first step. It was the trial court that improperly passed over the first and second steps of Batson. Given this situation, the Hernandez plurahty opinion simply does not apply.
II. A BATSON ERROR IS STRUCTURAL
The lead opinion concedes that Batson errors are *311 subject to automatic reversal, but I find it important to explain why nearly every court that has considered the issue reached the same conclusion.[5] This includes the United States Supreme Court, because Batson itself ordered an automatic reversal. Batson, supra at 100.
The Supreme Court gave this reasoning for requiring automatic reversal: “[W]hen a petit jury has been selected upon improper criteria or has been exposed to prejudicial publicity, we have required reversal of the conviction because the effect of the violation cannot be ascertained.” Vasquez v Hillery, 474 US 254, 263; 106 S Ct 617; 88 L Ed 2d 598 (1986). This is in line with the appropriate handling of all structural errors.
The Supreme Court articulated the difference between trial error and structural error in Arizona v Fulminante, 499 US 279; 111 S Ct 1246; 113 L Ed 2d 302 (1991). A trial error occurs during the presentation of the case to the jury. It can be quantitatively assessed in the context of other evidence for the purpose of determining whether it was harmless beyond a reasonable doubt. Id. at 307-308.
A structural error, on the other hand, affects the framework of the trial proceeding. It is more than a mere error in presenting the proofs of guilt. /d. at 310. When a structural error occurs, a criminal trial cannot serve as a rehable vehicle for the determination of guilt. No criminal punishment could be fair if structural error existed in the framework of the trial. Id.
Although no constitutional guarantee exists with regard to them, Batson errors resulting in a denial of *312 the use of peremptory challenges must be structural. They attack the fundamental framework of the trial proceeding. They change the very makeup of the jury. And they do not occur during the presentation of evidence. Given that they do not involve evidence, they cannot be quantitatively assessed in the context of other evidence. This fact is a further indicator that they are not in the nature of trial errors. Id.
Structural errors require automatic reversal. Id. at 309-310; People v Cornell, 466 Mich 335, 363 ns 16-17; 646 NW2d 127 (2002). Therefore, once we conclude that a Batson error existed, we must automatically reverse a conviction. Because this is exactly what the Court of Appeals did, I would affirm its decision.
Automatic reversal leaves no room for error on the part of trial courts. But, as the United States Court of Appeals for the Ninth Circuit stated, referring to Bat-son:
It is true that trial courts bear a heavy burden in enforcing Batson’s anti-discrimination principle, given that the erroneous denial of a party’s peremptory challenge has traditionally warranted automatic reversal. However, this concern was alleviated by a recent Supreme Court decision offering guidance to trial courts faced with deciding whether a particular peremptory challenge has a discriminatory motive. [United States v Annigoni, 96 F3d 1132, 1142 (CA 9, 1996), citing Burkett, supra at 767-768.]
The Supreme Court has carefully laid out the procedure required to satisfy Batson. We must insist that trial courts adhere to it.
III. PEREMPTORY CHALLENGES AND AUTOMATIC REVERSAL
Had no Batson errors occurred here and were the errors under scrutiny no more than the wrongful denial *313 of a peremptory challenge,[6]we should nonetheless issue an automatic reversal. The lead opinion’s attempt to apply harmless error review is contrary to the decisions of most other courts that have reviewed the issue. Moreover, harmless error review is simply unworkable and cannot logically apply to rulings on peremptory challenges.
The lead opinion departs from the trend set by most other courts that have considered the application of a harmless error analysis to peremptory challenges. It cites United States v Martinez-Salazar,[7] to demonstrate that a harmless error analysis is appropriate here. Use of this authority illustrates the dangers in relying on dictum.[8]
It is undeniable that the cited language is dictum given that the Supreme Court concedes that it need not have reached the issue of an appropriate remedy for the claimed error. “Because we find no impairment, we do not decide in this case what the appropriate remedy for a substantial impairment would be.” Id. at 317 n 4. I disagree with the lead opinion’s assertion that the dictum of this footnote can constitute “a significant shift” in the law.
*314 The lead opinion’s reliance on Martinez-Salazar is further misplaced given that the case dealt with an issue distinct from the denial of the use of peremptory challenges. In Martinez-Salazar, the trial court erroneously refused to remove a juror for cause. The defendant then used a peremptory challenge to remove the juror. Id. at 307. The defendant was not denied the use of his peremptory challenges. In fact, he exercised one so that the objectionable juror did not sit in judgment of him. Therefore, Martinez-Salazar did not deal with the denial of a peremptory challenge, and its dictum should not be read as a comment on the issue before us.
The distinction between peremptory denial cases and Martinez-Salazar makes a real difference when we consider whether harmless error review applies. In Martinez-Salazar, the only existing error was the trial court’s error in denying a challenge for cause. It was cured when the defendant used a peremptory challenge to remove the juror. Consequently, the juror took no part in the trial proceedings. The error arose and was cured before the trial began.
On the other hand, when a peremptory challenge is denied, the challenged juror stays on the jury and sits in judgment of the defendant. His or her presence permeates the trial, and the error infects the entire case.[9]
The all-encompassing penetration of the error explains why a harmless error analysis is out of place in the review of the wrongful denial of a peremptory challenge. To accurately make a harmless error analysis, the court would have to determine the effect that the challenged juror had on the verdict. In a case directly on point, the United States Court of Appeals for the Ninth Circuit expressed the problem in these words: *315 “To subject the denial of a peremptory challenge to harmless-error analysis would require appellate courts to do the impossible: to reconstruct what went on in jury deliberations through nothing more than post-trial hearings and sheer speculation.” Annigoni, supra at 1145.
Appellate courts have no record of what is said injury rooms and no record of what potentially subtle influences one juror had on the others. Therefore, no device exists with which to plumb the magnitude of the error.
Unlike the typical error subject to harmless error review discussed in Fulminante, errors in leaving individuals on a jury cannot be quantitatively assessed in the context of the evidence presented. Fulminante, supra at 308. Without a means of comparison or measurement, meaningful harmless error analysis is impossible. For this reason, it is illogical to rule as the majority does. It ignores the plight of courts in future cases that attempt to follow its ruling.
Chief Justice TAYLOR demonstrates in his opinion dissenting in part and concurring in part the difficulty faced in trying to apply the harmless error standard. Although he finds the error harmless, he offers no analysis for his conclusion. Likely, this is because there is no legitimate analysis, beyond mere speculation, that can be applied. In fact, the Chief Justice has demonstrated that the rule now created by the majority is a rule of automatic affirmance. It defies fair appellate scrutiny.
The lead opinion implies that a rule requiring automatic reversal would contradict MCL 769.26.[10] This is *316 inaccurate. Allowing a peremptory challenge error to stand would always amount to a miscarriage of justice. A miscarriage of justice exists if it affirmatively appears that the error undermines the reliability of the verdict. People v Lukity, 460 Mich 484, 495; 596 NW2d 607 (1999).
Given that an error in denying a peremptory challenge changes the makeup of the jury, it potentially changes the verdict. It alters the jury deliberation and interaction process. The point of a peremptory challenge is to remove someone who appears biased but who might not be removed for cause. Rejecting the peremptory challenge leaves this potentially biased or prejudiced juror on the jury, undermining the validity of the verdict.
Requiring automatic reversal for peremptory challenge errors is consistent with the plain error standard of review articulated by this Court in People v Carines, 460 Mich 750; 597 NW2d 130 (1999). Carines gave three requirements for plain error: the error (1) must have occurred, (2) must be clear or obvious, and (3) must affect substantial rights. Id. at 763. Peremptory challenge errors would always meet this standard.
A peremptory challenge error becomes obvious after the trial court rules on an objection to it. The error is that either a juror who should not be on a jury remains or one who should remain does not.
These errors affect substantial rights because they shape the jury. Peremptory challenges are a means of eliminating extreme beliefs or partiality from a jury. *317 Batson, supra at 91. The right to a peremptory challenge enables the parties to strike jurors who, although not necessarily excusable for cause, appear biased or hostile in some way. Therefore, the right implicates defendant’s right to a fair and impartial trial.
Those plain errors require reversal because they “ ‘ “seriously [affect] the fairness, integrity or public reputation of judicial proceedings” ....’” Carines, supra at 763, quoting United States v Olano, 507 US 725, 736; 113 S Ct 1770; 123 L Ed 2d 508 (1993), quoting United States v Atkinson, 297 US 157, 160; 56 S Ct 391; 80 L Ed 555 (1936). Given the fundamental nature of the jury process, having an unfairly chosen jury raises serious questions regarding the integrity and public reputation of the judicial proceedings.[11] Therefore, the errors require automatic reversal. Id.
Because we have no tools to gauge the effect of errors in denying peremptory challenges, a harmless error analysis of them is simply unworkable. Therefore, such errors must result in automatic reversal.
IV PRIMA FACIE CASE OF DISCRIMINATION
The trial court erred in failing to follow Batson’s three-step process, and the error is subject to automatic reversal. Hence, the issue whether a prima facie case of discrimination actually existed is technically irrelevant to my dissent. But I feel that it is appropriate to respond to the majority’s conclusion that a prima facie case existed.
*318 To reach the majority’s conclusion requires not only a strained reading of the existing law regarding Batson, but also a strained reading of the factual record in this case. The members of the majority attempt to save the trial judge’s ruling by using twenty-twenty hindsight to fit his actions into the Batson procedure. Initially, they conclude that, despite the fact that the judge never ruled that prima facie discrimination had occurred, his comments equated to such a ruling.
The trial judge stated that he disallowed the peremptory challenges because defense counsel was using his challenges for the purpose of excluding white males. The record does not support his conclusion. First, at least two of the jurors that defense counsel challenged were female. Second, the race of each challenged juror is not in the record. Therefore, we do not know how many of the challenged male jurors were Caucasian.[12] Third, we know from defense counsel’s comments regarding the jurors challenged between Jurors No. 10 and No. 5 that valid reasons existed to challenge some of the Caucasian male jurors. Finally,, we can tell from the record that the number of Caucasian males left on the jury was either equal to or exceeded the number of minorities on the jury.
Considering all these facts, a prima facie case of discrimination did not exist. Batson requires a court to carefully examine all relevant factors as well as the totality of the circumstances in making its decision. Batson, supra at 93-94, 96-97. The record indicates that *319 the judge here failed to exercise that careful scrutiny. Instead, he rushed to a conclusion before hearing a thorough discussion and without making an adequate investigation.
It is true that a pattern of strikes against one racial group in jury selection might support an inference of discrimination. Id. at 97. But defendant countered this alleged pattern when finally allowed to respond.[13] He indicated that his intervening peremptory challenges fit no pattern. The fact that a large number of Caucasian males remained on the jury, he argued, demonstrates that he was not targeting such jurors. Our courts have held that a showing that the challenged racial group continued to have a strong representation on the jury is significant evidence that no discriminatory intent existed. People v Eccles, 260 Mich App 379, 387-388; 677 NW2d 76 (2004); People v Williams, 174 Mich App 132, 137; 435 NW2d 469 (1989).[14]
Given the weak evidence of a pattern and the fact that Caucasian males constituted a significant portion of the jury, the prosecution failed to make a prima facie case of discrimination. Therefore, defense counsel did not need to offer race-neutral reasons for his peremptory challenges. The burden never shifted to him. The trial judge never concluded the first Batson step. Hence, he erred in allowing Jurors No. 10 and No. 5 to remain on the jury.
*320 V THE LEAD OPINION’S DICTUM REGARDING MILLER
Part IV of Justice CORRIGAN’S opinion concerns our decision in Miller, supra, and the Court of Appeals decision in People v Schmitz, 231 Mich App 521; 586 NW2d 766 (1998). As Justice WEAVER points out, the entire section is dictum.
In Miller, the trial court diluted the defendant’s peremptory challenge rights by using the struck jury method.[15] Miller, supra at 323. The case before us does not deal with the dilution of a defendant’s right to peremptory challenges. It deals with the denial of his peremptory challenges. For this reason, Miller is clearly distinguishable from this case.
The lead opinion concedes that its discussion of Miller is dictum by stating that “we have concluded that the trial court did not err in denying defense counsel’s peremptory challenges.” Ante at 299. Because it concludes that Miller does not apply to its decision, any discussion of Miller must be obiter dictum. Part IV lacks the force of an adjudication and is not binding under the principles of stare decisis. People v Borchard-Ruhland, 460 Mich 278, 286 n 4; 597 NW2d 1 (1999). Therefore, it is of no value. The issue raised in Miller is not before us, and the lead opinion has offered no legal basis to overrule this precedent or to support a conclusion that some former case overruled this precedent.
Oddly enough, the lead opinion claims that I “labor []” to avoid reference to Miller and Schmitz. Ante at 299 n 22. Nothing can be further from the truth. Even a cursory reading of this section of my dissent indicates *321 that I find Miller irrelevant. Miller deals with a struck-jury method, which is inapplicable to this case. Nor do I labor to avoid referencing Schmitz. I simply found other and more persuasive authority.
Those on the lead opinion state that they may reach Miller because I reference it. As stated above, I would not reference either Miller or Schmitz if the lead opinion had not attempted to overrule them.
Contrary to the lead opinion’s statement, nothing in my'opinion would prohibit the Court from revisiting Miller in the future. If a case actually raising a struck-jury method should come before the Court, the issue in Miller could be relevant and the Court could address it. There is nothing novel in my legal conclusion that it is inappropriate to overrule precedent in a case that addresses issues irrelevant to the precedent. But it is inappropriate, as a plurality of the Court does here, to attempt to signal the future demise of the precedent in dictum.
No case has ever explicitly overruled Miller. And the lead opinion’s attempt today amounts to nothing more than dictum. Therefore, Miller should remain valid law.
VI. CONCLUSION
The trial judge erred by failing to follow the Batson steps and by shifting the burden to defendant to disprove a presumption of discrimination. He also erred by concluding that a prima facie case of discrimination existed. He did not cure these errors. Batson errors and erroneous denials of peremptory challenges are subject to automatic reversal. Therefore, I would affirm the decision of the Court of Appeals, reverse defendant’s convictions, and remand the case for retrial.
*322 Also, no legal basis exists to overrule this Court’s decision in the Miller case. Any comment here on Miller is mere dictum without precedential value. I would leave Miller unmolested.

 People v Miller, 411 Mich 321; 307 NW2d 335 (1981).

 505 US 42, 59; 112 S Ct 2348; 120 L Ed 2d 33 (1992).

 The lead opinion makes no mention of what the “research” consisted of, and I have no knowledge of what it might be. I know of no research project on this subject conducted by this Court.

 The lead opinion also quotes Johnson v California, 545 US_; 125 S Ct 2410; 162 L Ed 2d 129 (2005), to contend that defendant’s failure to give race-neutral reasons should show support for an inference of discrimination. But defendant did not refuse to provide race-neutral reasons for his challenge. He was never asked for his reasons. Therefore, there was no refusal to answer and the quoted material from Johnson is inapplicable to this case. Id., 545 US_n 6; 125 S Ct 2418 n 6; 162 L Ed 2d 140 n 6.

 See United States v McFerron, 163 F3d 952, 955-956 (CA 6, 1998), United States v Hall, 152 F3d 381, 408 (CA 5, 1998), Tankleff v Senkowski, 135 F3d 235, 249-250 (CA 2, 1998), United States v Underwood, 122 F3d 389, 392 (CA 7, 1997), and Ford v Norris, 67 F3d 162, 170-171 (CA 8, 1995).

 Of course, I disagree with this assumption because I believe that Batson errors occurred. But I also question the assumption for the reason that the judge was considering Batson when deciding to deny the challenges. This means that, in denying defendant’s challenges, the judge specifically left certain individuals on the jury because of their race. If the judge erred in denying the peremptory challenges, he erroneously empanelled jurors because of their race under the belief that defendant was targeting members of the jurors’ race. The issue before us does not involve the typical denial of a peremptory challenge. The lead opinion has not made this distinction.

 528 US 304; 120 S Ct 774; 145 L Ed 2d 792 (2000).

 There is unavoidable irony in-the lead opinion’s reliance on this footnote. The footnote’s purpose is to criticize the existence of dicta in Swain v Alabama, 380 US 202; 85 S Ct 824; 13 L Ed 2d 759 (1965). Martinez-Salazar, supra at 317 n 4.

 See State v Vreen, 143 Wash 2d 923; 26 P3d 236 (2001); People v Lefebre, 5 P3d 295 (Colo, 2000).

 MCL 769.26 provides:
No judgment or verdict shall he set aside or reversed or a new trial be granted by any court of this state in any criminal case, On *316 the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

 The lead opinion itself concedes that the exclusion of even one juror undermines public confidence in the fairness of the system. Ante at 293, citing J E B v Alabama ex rel T B, 511 US 127, 142 n 13; 114 S Ct 1419; 128 L Ed 2d 89 (1994). Therefore, it has conceded the necessity of automatic reversal.

 The lead opinion bases its contention that the race of the excused jurors is determinable on the judge’s statement that defense counsel had repeatedly excused Caucasian male jurors. Obviously, this statement is unclear. It is well established that at least two of the challenged jurors were female. Hence, the statement is simply too inexact to determine the race of the chállenged jurors, and it is inappropriate for the lead opinion to rely heavily on it.

 The lead opinion contends that the trial judge “almost immediately” allowed defense counsel to respond. Ante at 290. The record does not support this. Defense counsel and the prosecution had to demand that the judge allow them to make a record. The judge only belatedly and reluctantly allowed defense counsel to speak.

 See also United States v Sangineto-Miranda, 859 F2d 1501, 1521-1522 (CA 6, 1988), United States v Grandison, 885 F2d 143, 147 (CA 4, 1989), Commonwealth v Clark, 551 Pa 258, 280; 710 A2d 31 (1998), and Valdez v People, 966 P2d 587, 594 (Colo, 1998).

 Under the struck jury method, all members of the jury array are called into the courtroom at once. They are questioned collectively, not individually. After the parties exhaust their preemptory challenges, the judge assembles the jury using the remaining members of the array, starting with the lowest numbers. Miller, supra at 323-324.