*543 CONCURRING IN PART AND DISSENTING IN PART
GRIFFIN, Circuit Judge,
concurring in part and dissenting in part.
This appeal implicates the right to intrastate travel, “an important and largely unexplained area of constitutional jurisprudence.” Lutz v. City of York, 899 F.2d 255, 256 (3d Cir. 1990). When our court last examined it, we declared the right fundamental but left open the question of whether strict or intermediate scrutiny governs laws burdening the right. Johnson v. City of Cincinnati, 310 F.3d 484, 496-98, 502 (6th Cir. 2002). Today, the majority and I agree that intermediate scrutiny is the appropriate legal standard for constitutional review of the City of Memphis’s practice of sweeping Beale Street. However, the district court judge and district court jury applied the more onerous legal standard of strict scrutiny. Despite the error of law and misdirected findings of fact, my colleagues affirm. I respectfully disagree and thus dissent in part.
Unlike my colleagues, I conclude that a reasonable juror could have rendered a different verdict with the ■ - instructions framed correctly in terms of a reasonable 'potential threat to public safety—as opposed to the narrower and erroneous “existing, imminent or immediate threat to public safety.” Here, applying the wrong legal standard of strict scrutiny, the district court relied wholly on the jury’s factual findings in ruling that the practice is unconstitutional. Absent findings of fact addressing the material factors of intermediate scrutiny, we lack a sufficient factual basis to decide the case. I therefore respectfully dissent on the issue of whether the practice survives intermediate scrutiny. In all other respects, I concur in the majority opinion.
To survive intermediate scrutiny, a municipal practice must be “narrowly tailored to meet significant city objectives.” See Lutz, 899 F.2d at 270; see also Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Unlike strict scrutiny, intermediate review does not require that the practice be the “least restrictive or least intrusive means” of serving the government’s objectives. See, e.g., Prime Media, Inc. v. City of Brentwood, 398 F.3d 814, 819-20 (6th Cir. 2005) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 798-800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)).
Under intermediate scrutiny, the burden is on the City to identify a “significant” government objective that the Beale Street Sweep is narrowly tailored to achieve. Ross v. Early, 746 F.3d 546, 552 (4th Cir. 2014) (citing Bd. of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)) (“The City bears the burden of showing the Policy satisfies [intermediate] scrutiny.”); see also Lutz, 899 F.2d at 270. The City partially satisfied its burden by identifying its interest in protecting public safety, which we have recognized as a “compelling” interest. See, e.g., Johnson, 310 F.3d at 502.
In this case, the outcome-determinative question is whether the City’s practice was narrowly tailored to protect public safety. However, the district court instructed the jury using a different and more onerous standard and decided the case applying the wrong law. Because the jury’s factual findings and the district court’s legal ruling are inextricably intertwined and premised upon the incorrect legal standard of strict scrutiny, I would reverse and remand to the district court for further proceedings applying the correct law.
A remand is warranted because “[reversal is appropriate when the trial court ‘applies the incorrect legal standard, misapplies the correct legal standard, or relies *544 upon clearly erroneous findings of fact.’” Brumley v. Albert E. Brumley & Sons, Inc., 727 F.3d 574, 577 (6th Cir. 2013) (citation omitted); see also Siding and Insulation Co. v. Aleo Vending, Inc., 822 F.3d 886, 901-02 (6th Cir. 2016); and National Hockey League Players’ Ass’n v. Plymouth Whalers Hockey Club, 325 F.3d 712, 717-20 (6th Cir. 2003).
In the district court, the City defended its sweep practice as furthering public safety, arguing that the City’s decision to direct pedestrians to either enter a club or leave the street in the early morning hours “on some Saturday and Sunday nights is a narrow and reasonable intrusion” on individual rights, designed to “protect[] the safety of persons and property” on Beale Street. Applying strict scrutiny, however, the district court denied summary judgment in favor of the City on the grounds that there were genuine issues of material fact regarding the nature of the practice. Fact-finding was therefore necessary. At the subsequent trial, the district court required the City to prove that it did not carry out the challenged practice “unless [the] conditions throughout the Beale Street area pose[d] an existing, imminent or immediate threat to public safety.” (Emphasis added.) The jury found as a matter of fact that the City failed to meet this burden, and, on this basis, the district court entered an injunction ruling the practice unconstitutional under the legal standard of strict scrutiny.
The majority agrees that the district court erred in its jury instructions and application of the law. Under the correct legal standard of intermediate scrutiny, the government was not required to prove that its practice was the least restrictive means to protect public safety. Thus, a reasonable potential risk to public safety, as opposed to an “existing, imminent or immediate threat to public safety,” was sufficient to justify a narrow time, place, and manner restriction like the Beale Street Sweep, which was limited to a two-block area for typically no longer than two hours in the early morning hours of some weekends.
As the City emphasizes, “Beale Street is a public roadway unlike any other” in the City of Memphis, the State of Tennessee, and perhaps the United States. By City ordinance, vendors may sell, and patrons may carry, alcoholic beverages on the sidewalks and street when the street is closed to motor traffic. See Tenn. Code Ann. § 57-4-102(27)(A)(iv); City of Memphis Ordinances §§ 7-4-15(C)(4), 7-8-23. Alcohol may be sold until 5:00 a.m. on Beale Street. See Tenn. Code Ann. §§ 57-4-102(27)(A), 57—4—203(d)(4). The City routinely uses barricades to restrict access to Beale Street, both to motor vehicle and foot traffic, and subjects patrons to identification and weapons checks.
Law enforcement is tasked every day with maintaining public safety on Beale Street among thousands of intoxicated persons concentrated in a two-block area with a history of disorderly conduct, stampedes, fights, sexual assaults, and gang violence. In that context, the City’s decision to clear a two-block section of Beale Street for fewer than two hours in the early morning hours of some weekends may be narrowly tailored (just not the least restrictive means) to protect public safety. Moreover, the record demonstrates that the City did not carry out the practice every weekend morning. Rather, officers awaited a real-time determination by a supervisor to sweep “if the lieutenants felt like ... there was a need to [do] it.” (Emphasis added.) Deputy Chief Arley Knight of the Memphis Police Department testified that the practice was usually carried out between 3:00 a.m, and 5:00 a.m. on weekends because that was the time when they “felt *545 [the police] were having the most problems.” Rather than sweep Beale Street regardless of the conditions, Knight further testified that the practice was carried out at “the discretion of [the supervising] lieutenant” and that “the crowds dictated the safety.” (Emphasis added.) The jury’s finding that this practice occurred “mainly on weekends at or about 3:00 a.m.” (emphasis added) is consistent with the City’s position.
Given Beale Street’s unique context and history of incidents threatening public safety in the early morning hours, as well as the discretion that supervising officers exercised in carrying out the practice, a reasonable juror could have found that the City took into account reasonable potential threats to public safety. When I consider this possibility next to the limited time restriction (less than two hours on some weekends) and limited place restriction (two-block street), I disagree with the majority’s decision to affirm on the grounds of harmless error.
Here, the district court’s ruling is premised upon factual findings framed in terms of strict, as opposed to intermediate, scrutiny. Although not articulated in the majority opinion, my colleagues must conclude that the preserved constitutional errors did not affect the substantial rights of the City of Memphis. See Fed. R. Civ. P. 61. I respectfully disagree.[1]
As the district court previously ruled regarding the motions for summary judgment, genuine issues of material fact exist regarding the Beale Street Sweep at issue. In my view, the constitutional legal errors committed by the district court cannot be cured by the inappropriate fact-finding attempted by my appellate colleagues.
I would reverse and remand for further proceedings applying the correct law of intermediate scrutiny. In all other respects, I concur in the majority opinion.

. While the majority does not specify its standard of review for these preserved, constitutional errors, the errors certainly affect the City’s substantial rights and are not harmless beyond a reasonable doubt. See O’Neal v. McAninch, 513 U.S. 432, 441-42, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Tennessee Secondary School Athletic Ass’n v. Brentwood Academy, 551 U.S. 291, 303, 127 S.Ct. 2489, 168 L.Ed.2d 166 (2007); and United States v. Reid, 751 F.3d 763, 767 (6th Cir. 2014) (“The civil and criminal harmless error rules after all spring from the same statute, use more or less the same language, and in general require courts to apply the same standard.” (citation omitted)).