# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2156

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Emmanuel Jones, | * | Eastern District of Missouri. |
| | * | |
| Appellant. | * | |

_____

Submitted: January 11, 2001

Filed: April 4, 2001

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and DOTY,[1]
District Judge.

_____

BEAM, Circuit Judge.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of
Minnesota, sitting by designation.

A jury convicted Emmanuel Jones, an African American, of various firearms possession offenses and the district court[2] sentenced him to 192 months' imprisonment. During jury selection, the government used peremptory strikes to dismiss two of four African American veniremembers. Jones argues that, pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), the court clearly erred in its determination that the government's proffered reasons for one of the strikes were race neutral and not merely pretextual.[3] Because the record supports the court's findings, we affirm.

Upon his challenge to the prosecution's peremptory strike, the court found Jones had made a prima facie showing that the strike was based on race.[4] In response, the government offered various justifications for the strike, including the veniremember's attire, profession, and familiarity with the vicinity in which the incident occurred. The

---

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[3]In his brief, Jones addresses only one of the peremptory strikes and we, therefore, limit our review accordingly. Malone v. Vasquez, 138 F.3d 711, 716 (8th Cir. 1998) (finding appellant abandoned several claims made to the district court by not presenting them in his appellate brief).

[4]The Supreme Court has stated:

[T]he prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. . . . We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Batson, 476 U.S. at 97; see also United States v. Davis, 154 F.3d 772, 781 (8th Cir. 1998) (indicating that we need not address whether defendant asserting Batson challenge made prima facie case when government has offered race-neutral explanations for peremptory strikes).

prosecutor also indicated that the veniremember appeared tired.  The court found these explanations to be race neutral.   Jones only addressed the clothing and fatigue justifications, and asked that all the veniremembers be photographed to preserve their manner of dress for the record.   Indicating that cameras were prohibited in that courthouse, the court refused this request, but added that counsel could photograph the jurors as they exited.[5]  The court agreed with the prosecutor that the veniremember appeared "somewhat restless and tired," and rejected the contention that the government had treated the veniremember differently than others similarly situated.  It concluded Jones had failed to prove purposeful discrimination and denied his challenge.

A Batson challenge requires a three-step, burden-shifting analysis. United States v. Elliott, 89 F.3d 1360, 1365 (8th Cir. 1996).  First, the opponent of a peremptory strike must make a prima facie case of racial discrimination.  Purkett v. Elem, 514 U.S. 765, 767 (1995).  The burden of production then shifts to the proponent of the strike, who must tender a race-neutral explanation.  Id.  Finally, if a race-neutral explanation is presented, the trial court must determine whether the opponent of the strike has proven purposeful racial discrimination.  Id.  We review for clear error the court's ultimate evaluation of whether discriminatory intent motivated the government. Elliott, 89 F.3d at 1365.

"In view of the heterogenous population of our Nation, public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his race."[6]  Batson, 476 U.S. at 99.

---

[5]We note that the defense could have achieved its desired result by merely describing, on the record, what veniremembers were wearing.

[6]The prosecutor is an integral component of the criminal justice system.  As such, the government shares the responsibility of strengthening that system in this respect to prevent Batson from becoming a "meaningless charade."  See Elem, 514 U.S. at 777 (Stevens, J., dissenting); see generally Model Rules of Prof'l Conduct R.

Although "the prosecutor's explanation [for his strike] need not rise to the level justifying exercise of a challenge for cause," he "may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption–or his intuitive judgment–that they would be partial to the defendant because of their shared race." Id. at 97. At the second step of analysis, the prosecution's reason does not necessarily have to make sense, but it must be one that does not deny equal protection. Elem, 514 U.S. at 769. Therefore, discriminatory intent cannot be inherent in the reason. Williams v. Groose, 77 F.3d 259, 261 (8th Cir. 1996). For instance, the veniremember's grooming may be a sufficiently race neutral explanation, Elem, 514 U.S. at 769, as may his style of dress, United States v. Swinney, 970 F.2d 494, 496 (8th Cir. 1992), and his inattentiveness and demeanor, United States v. Marrowbone, 211 F.3d 452, 456 (8th Cir. 2000). But see United States v. Sherrills, 929 F.2d 393, 395 (8th Cir. 1991) (indicating "a prosecutor's explanation of challenges on the grounds of inattentiveness deserves careful scrutiny by the district court, and special care by counsel to fully develop the record concerning the specific behavior" because determining whether such general assertions are accurate "requires subjective judgments that are particularly susceptible to the kind of abuse prohibited by Batson"). Because the burden of persuasion remains with the defendant, even if the court finds the prosecutor's justification"implausible or fantastic," if it is race neutral, the court must proceed to the third step. Elem, 514 U.S. at 768.

The plausibility or persuasiveness of the justification becomes relevant at this final step, where the court determines whether the opponent of the strike has met his burden of proving purposeful discrimination. Id. Here, genuineness is a proper basis

3.8 & cmt. (1998) ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate."); Model Code of Prof'l Responsibility EC 7-13 (1981) ("The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.").

for finding a peremptory strike to be racially motivated. Id. at 769. Therefore, even though the government's stated reason is race neutral, a defendant may be able to prove it merely pretextual. Williams, 77 F.3d at 261. Although determination of the prosecution's motivation turns primarily on the court's assessment of credibility and demeanor, Elliott, 89 F.3d at 1365, "[a] party can establish an otherwise neutral explanation is pretextual by showing that the characteristics of a stricken black panel member are shared by white panel members who were not stricken," Davidson v. Harris, 30 F.3d 963, 965 (8th Cir. 1994). "Pretext can also be based on a finding that the factors used to explain the strike are irrelevant to a person's ability to perform as a juror in the particular case." United States v. Jenkins, 52 F.3d 743, 747 (8th Cir. 1995).

In the present case, the district court properly followed the process set forth in Elem, finding the prosecution's reasons for the peremptory strike to be race neutral, and proceeding to the final step. The prosecutor struck similarly situated veniremembers–one who was familiar with the vicinity and another who shared the defendant's profession. These factors were relevant because, as the prosecutor explained, he wanted jurors to whom he could provide a fresh conceptualization of the scene and, also, because those who shared the defendant's line of work might be sympathetic to him for reasons other than his culpability. The defense rebutted neither explanation, nor developed the record to address the assertions that the veniremember appeared tired and was inappropriately dressed. Cf. United States v. Jones, 195 F.3d 379, 382 (8th Cir. 1999) (indicating the defense failed to present evidence supporting its theory of pretext); Sherrills, 929 F.2d at 395 (highlighting the need to carefully develop the record).

Having reviewed the record, we find it supports the district court's determination that the defense failed to meet its burden. See Swinney, 970 F.2d at 496 ("The district court was in a unique position to judge the Government's peremptory challenges in light

of the voir dire, and the district court's observations in this regard are particularly crucial."). We, therefore, find no clear error and, accordingly, affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.