UNITED STATES of America, Plaintiff–Appellee,

v.

Kenneth Ray CAMPBELL, Defendant–Appellant.

No. 01–1485.

United States Court of Appeals, Eighth Circuit.

Submitted: Aug. 20, 2001. *

Filed: Oct. 29, 2001.

Daniel M. Scott, Minneapolis, MN, argued, for defendant–appellant.

Anthony W. Brown, Minneapolis, MN, argued, for plaintiff–appellee.

Before: BYE, LAY, and JOHN R. GIBSON, Circuit Judges.

LAY, Circuit Judge.

Kenneth Ray Campbell appeals his conviction of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(e). Campbell argues:

(1) the prosecutor impermissibly exercised a peremptory challenge against an African–American juror in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and (2) the district court's[1] sentence to a term of imprisonment in excess of ten years based upon the violent nature of Campbell's previous felonies violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Campbell argues the indictment did not allege, and the jury was not charged with finding beyond a reasonable doubt, that he had been convicted of three or more violent felonies committed on different occasions. We affirm.

## I.  Facts

On January 29, 2000, police were called to 2934 Cedar Avenue South, Apartment 104, Minneapolis, Minnesota, to investigate a report of property damage. Lillie Jones told the responding officers that a bullet had passed through the ceiling of her apartment and struck a coffee table in the middle of the living room. There was a hole in the ceiling above the coffee table and a spent slug was located on a window sill. Police proceeded to Apartment 204, directly above Jones' apartment, where they encountered Campbell. Although he denied knowing anything about a gun being discharged, Campbell was subsequently arrested. Loretta Baker, identified by Campbell as his wife, was also present in Apartment 204. She denied knowing anything about the discharge of a gun and was taken into custody. Upon a protective sweep of Campbell's apartment, police noticed a hole in the living room floor.

When asked about the hole, Campbell suggested that it was a cigarette burn.

Several witnesses in the building reported hearing a gunshot and seeing Campbell exit his apartment in the direction of the building's rear stairwell. A search of the stairwell by police yielded the firearm involved in this case—an EAA, Witness P-series .45 caliber pistol, serial number AE85843. A later search by police of Campbell's apartment resulted in the discovery of several magazines about firearms, a pistol case matching the serial number of the recovered gun, a live .45 caliber round, and an undeveloped roll of film. When developed, two photographs revealed the defendant holding the recovered gun.

Campbell was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(e). Although Campbell did not testify at trial, Loretta Baker did testify. Baker was familiar with the recovered gun, had fired it, had her picture taken with it, and had purchased ammunition for it. However, Baker claimed the firearm was Campbell's and that the discharge incident was his doing.

## II.  Discussion

### A.  The *Batson* Challenge

When the jury venire was called, three of the thirty-two potential jurors were African–Americans. The Government successfully moved to strike one of the African–American jurors, Jestin Vanbeek, for cause.[2] The prosecutor also struck a sec-

1. The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

2. Jestin Vanbeek had made statements to the effect that he had been falsely accused in a trial for armed robbery, that he believed police lied, that witnesses brought by the prose-

cution in his case lied, that he did not know if he could judge the testimony of police fairly, that he had been accused of the crime because he was an African–American person, and that he was bitter about the unfair system.

ond African–American juror, Darrell Smith, through a peremptory challenge.

In response to questions by the district court, Smith indicated that he had a degree in criminal justice, that he had formerly worked for the Minnesota Department of Corrections as an institutional parole officer as well as a case worker and counselor in halfway houses. He was asked whether having worked for the department of corrections would make it difficult to participate in this case in a fair and impartial manner. Smith indicated that, although he had worked for the state, he had a "propensity to work on behalf of the inmate or the defendant or the criminal to make sure he gets his rights." He told the court he had been called as a character witness at a criminal trial on behalf of an inmate at the correctional facility where he worked as a case worker. He described himself as an advocate for the inmates while he worked at the correctional facility in his capacity as a parole officer. Smith further stated that, now being employed by the St. Paul School District, he would have no reason to be swayed by either the prosecution or the defense. The district court denied the Government's motion to remove Smith for cause, stating: "If you want to get rid of him you'll have to use one of your strikes."

Campbell objected to the Government's exercise of its peremptory strike of Smith, arguing it was motivated by Smith's race in violation of *Batson.* In response, the prosecutor argued Campbell had failed to make an initial showing of discrimination and Smith's race had nothing to do with his decision to strike him. He explained that Smith's self-identification as an advocate for inmates and criminal defendants, his position that part of his job (as a parole officer) was to ensure inmates' rights were protected, and his propensity to work on behalf of defendants and inmates were sufficient race-neutral reasons for the exercise of its peremptory challenge. The Government expressed a general concern that Smith would not be able to be fair and impartial to its case. Furthermore, the Government noted it had exercised a peremptory challenge to Mr. Groebner, a white male, on similar grounds.[3] The district court denied defendant's challenge.[4]

■■■■ In *Batson,* the Supreme Court held that a prosecutor is prohibited from exercising peremptory challenges based upon the race of a potential juror. 476 U.S. at 89, 106 S.Ct. 1712. In order to prevail, the party challenging a peremptory challenge must first make a prima facie showing of racial discrimination. *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). "This can be done by showing circumstances that give rise to a reasonable inference of racial discrimination." *United States v. Hill,* 249 F.3d 707, 714 (8th Cir.2001). Once this is done, the burden shifts to the striking party to offer a race-neutral explanation. *Purkett,* 514 U.S. at 767, 115 S.Ct. 1769; *United States*

---

**3.** Mr. Groebner also worked six years in the criminal justice system as a case manager and counselor for adjudicated juvenile delinquents.

**4.** The district court ruled that Campbell had not made out a prima facie case, but continued with a discussion of the race-neutral reasons offered by the prosecutor, as well as the court's own concerns about Smith's potential biases.

The court observed that Smith's responses "raise the question ... as to whether he might be viewed as prodefendant." The court further commented that "if this defendant had been white, this juror had been white rather than black, that the Government would have made the same decision and would have struck him."

*v. Jones,* 245 F.3d 990, 992 (8th Cir.2001). If such a race-neutral explanation is proffered, the trial court must determine whether the prosecutor's explanation is mere pretext. *Purkett,* 514 U.S. at 767, 115 S.Ct. 1769; *Hill* 249 F.3d at 714. We review for clear error the district court's ruling. *Jones,* 245 F.3d at 992.

■ While it is possible, and in fact quite likely, that Smith's statements were meant to demonstrate to the district court his impartiality given his previous employment in the criminal justice system, the prosecutor's reasons are race-neutral and reasonable. Furthermore, the prosecutor exercised a peremptory challenge to Mr. Groebner, a similarly situated white venire member. As we have previously observed, the district court is in the best position to evaluate the truthfulness of the prosecutor's asserted explanations, and Campbell has not shown the district court clearly erred in rejecting his challenge to the Government's peremptory strike. *See Hill,* 249 F.3d at 712–14 (juror's participation in church activities during leisure time was sufficient race-neutral explanation when defendant did not argue that similarly situated white jurors were not challenged); *United States v. Wilson,* 867 F.2d 486, 487 (8th Cir.1989) (peremptory strike of juvenile court social worker with significant experience within criminal justice system was race neutral).

## B. Sentencing

Following a jury verdict of guilty, the Government filed a Notice to Seek Enhanced Sentence, indicating that it sought a higher sentence pursuant to 18 U.S.C. § 924(e), and United States Sentencing Guidelines § 4B1.4.[5] The enhancement requires a statutorily mandated minimum sentence of fifteen years imprisonment (and a guideline mandated minimum of 235 months) rather than the statutorily mandated maximum sentence of ten years imprisonment under 18 U.S.C. § 922(g). The district court adopted the Government's position and sentenced defendant to the lower end of the range mandated by the Sentencing Guidelines, nineteen years and five months imprisonment.

■ Campbell argues that his sentence was unjustified because the indictment did not allege that any of his prior convictions were for violent felonies or serious drug offenses. Thus, his argument continues, he can only be sentenced up to a maximum of ten years imprisonment rather than the enhanced penalty prescribed by 18 U.S.C. § 924(e)(1).[6] We review the trial court's factual findings in support of a sentencing enhancement for clear error and its application of the sentencing guidelines to the facts de novo. *United States v. O'Dell,* 204

---

**5.** The Armed Career Criminal classification applies to a defendant who is subject to an enhanced sentence under 18 U.S.C. § 924(e) and, in this case, results in a base offense level of thirty-three as opposed to twenty-four calculated under Chapters Two and Three of the Guidelines. *See* U.S. Sentencing Guidelines Manual §§ 2K2.1(a)(2) & 4B1.4.

**6.** 18 U.S.C. § 922(g)(1) makes it unlawful for anyone "who has been convicted ... of, a crime punishable by imprisonment for a term exceeding one year" to possess "any firearm or ammunition." 18 U.S.C. § 924(a)(2) provides generally that "[w]hoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (*o* ) of section 922 shall be ... imprisoned for not more than 10 years...."

> 18 U.S.C. § 924(e)(1) however specifically states:
> In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be ... imprisoned not less than fifteen years....

F.3d 829, 836 (8th Cir.2000); *United States v. Molina,* 172 F.3d 1048, 1058 (8th Cir. 1999); *United States v. Elliott,* 89 F.3d 1360, 1370 (8th Cir.1996).

■ Campbell argues that because the enhanced penalty under § 924(e)(1) increased his sentence to one greater than the statutory maximum proscribed for the base offense of being a felon in possession of a firearm, the Supreme Court decision in *Apprendi* requires the nature of those felonies to be pled in the indictment and proven to a jury if he is to be sentenced thereunder. Campbell contends that post-*Apprendi,* 18 U.S.C. § 924(e) is a substantive offense, distinct from the offense set out in § 922(g)(1). We hold this is a misreading of the Court's decision in *Apprendi.*

In *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the defendant had been convicted of illegally reentering the United States after having been previously deported following conviction of aggravated felonies pursuant to 8 U.S.C. § 1326(b)(2). Almendarez–Torres objected to his sentence of eighty-five months imprisonment, arguing that his indictment had not mentioned his earlier aggravated felony convictions. Therefore, he claimed that he could not be sentenced to more than two years imprisonment, which was the sentence applicable for one convicted of the same crime without the underlying previous convictions. *See* 8 U.S.C. § 1326(a) (describing the substantive offense and authorizing a sentence of up to two years imprisonment). The Fifth Circuit rejected this argument. *United States v. Almendarez–Torres,* 113 F.3d 515 (5th Cir.1996). The Supreme Court granted certiorari to resolve a conflict between the prevailing view of the circuit courts represented by the Fifth Circuit and a contrary position taken by the Ninth Circuit in *United States v. Gonza-lez–Medina,* 976 F.2d 570 (9th Cir.1992) (holding that subsection (b)(2) constituted an offense distinct from that in subsection (a)).

The Supreme Court affirmed the Fifth Circuit, holding "that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense." *Almendarez–Torres,* 523 U.S. at 235, 118 S.Ct. 1219. More generally, the Court made clear that it found recidivism statutes "as typical a sentencing factor as one might imagine." *Id.* at 230, 118 S.Ct. 1219. "Consequently, neither the statute nor the Constitution require[d] the Government to charge the factor that it mentions, an earlier conviction, in the indictment." *Id.* at 226–27, 118 S.Ct. 1219.

Only one year later, in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court addressed provisions of a carjacking statute that established higher penalties to be imposed when death or serious bodily harm occurred. *See* 18 U.S.C. § 2119. In *Jones,* the Court held "the fairest reading of § 2119 treats the fact of serious bodily harm as an element, not a mere enhancement," relating to the substantive offense of carjacking. *Jones,* 526 U.S. at 239, 119 S.Ct. 1215. While the holding in *Jones* appears to lend support to Campbell's argument, the *Jones* Court explicitly distinguished *Almendarez–Torres* with respect to recidivism statutes. *Id.* at 235, 118 S.Ct. 1219 (noting that *Almendarez–Torres* stressed the "history of treating recidivism as a sentencing factor" and the absence of any statute clearly making prior convictions offense elements where the offense conduct was independently unlawful). While explaining that *Almendarez–Torres* did not control the result in *Jones,* the Court stated: "*Almendarez–Torres* ... stands for the proposition that not every fact expanding a penalty range must be

stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged." *Id.* at 248, 118 S.Ct. 1219.

The Supreme Court again addressed the issue of sentence enhancements a year later in *Apprendi,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. *Apprendi* resolved the question of whether a state hate crime statute that increased the statutory maximum penalty for underlying firearms convictions, based upon a judge's finding (by a preponderance of the evidence) that the defendant acted with the purpose to intimidate the victim based upon race, violated the Due Process Clause. The Court held it did and, as a general matter, any fact that will increase the penalty for a crime beyond the statutory maximum must be submitted to the jury. *Id.* at 490–97, 120 S.Ct. 2348. Nevertheless, the Court again recognized the continuing validity of *Almendarez–Torres* as a narrow exception to the broad rule it announced. *Id.* at 490, 120 S.Ct. 2348 (*"Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added).

Campbell is aware of the exception carved out of the general rule in *Apprendi.* He argues that 18 U.S.C. § 924(e)(1) does not simply create an aggravating factor, but sets forth a "complex series of factual findings" to determine whether or not prior offenses constitute violent felonies or serious drug offenses such that they be included. He suggests that this "extensive fact finding function belongs to juries in criminal cases." Brief for Appellant at 21. We do not agree. While *Almendarez–*

*Torres* remains a narrow exception to the rule announced in *Apprendi,* that exception is based upon

the certainty that procedural safeguards attached to any "fact" of prior conviction, and the reality that [the defendant failed to] challenge the accuracy of that "fact" in his case, mitigate[ ] the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a "fact" increasing punishment beyond the maximum of the statutory range.

*Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348. Furthermore, the Supreme Court has indicated its view that § 924(e) "focuses on the *fact* of the conviction. . . ." *Custis v. United States,* 511 U.S. 485, 490–91, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). Given this reasoning, our precedent, as well as the specific facts and circumstances presented in the case at bar, we reject Campbell's arguments and uphold the district court's sentence.

This court has previously recognized that § 924(e) "acts as a sentencing enhancement provision for individuals convicted of violating § 922(g)." *United States v. Talley,* 16 F.3d 972, 974 n. 2 (8th Cir.1994). Furthermore, although we have acknowledged that the *Apprendi* Court "expressed a willingness to reconsider" *Almendarez–Torres,* it left that decision "untouched." *United States v. Aguayo–Delgado,* 220 F.3d 926, 932 n. 4 (8th Cir.2000). It is the law in this circuit, until the Supreme Court chooses to revisit the question of recidivism statutes, that *Apprendi* does not require the "fact" of prior convictions to be pled and proved to a jury. *See United States v. Rush,* 240 F.3d 729, 731 (8th Cir.2001) (per curiam).[7]

---

**7.** Other circuits addressing this issue have come to the same conclusion. *See United States v. Tighe,* 266 F.3d 1187, 1190–91 (9th Cir.2001); *United States v. Skidmore,* 254 F.3d 635, 642 (7th Cir.2001); *United States v. Thomas,* 242 F.3d 1028, 1034–35 (11th Cir. 2001); *United States v. Mack,* 229 F.3d 226, 235 n. 12 (3d Cir.2000); *United States v. Dor-*

In the present case, Campbell was charged in the indictment of violating 18 U.S.C. §§ 922(g)(1) and 924(e). The indictment set forth seven previous crimes for which Campbell had been convicted, including second degree assault, third degree burglary, second degree burglary, burglary, theft of a motor vehicle, and theft. It seems clear from the indictment that the Government intended to utilize the sentencing enhancement provided for in § 924(e). The Presentence Report correctly classified Campbell as an Armed Career Criminal as set out in United States Sentencing Guidelines § 4B1.4. The district court acted within its authority when it adopted the Presentence Report's findings and guideline application. It found that the total offense level was thirty-three, and that Campbell had twenty-nine criminal history points (Category VI), which results in a Sentencing Guidelines range of 235–293 months imprisonment. The district court sentenced Campbell to the low end of that range. We do not find this to be improper.

■ Finally, Campbell directs our attention to the recently decided case of *United States v. Olson,* 262 F.3d 795 (8th Cir.2001), in which this court overturned a defendant's conviction of bank robbery under 18 U.S.C. § 2113(a). That case is inapposite. In *Olson,* we simply held that when the indictment fails to charge an *essential element of a crime,* it fails to allege a violation of the statute; mentioning the statute in the indictment is not enough. *Id.* at 800. The parties in that case agreed force or intimidation was an essential element of the offense for which the defendant was charged. The dispute centered on whether the indictment's mere citation of the statute was sufficient. This court announced no new rule of law when it stated that "citation of the statute, without more, does not cure the omission of an essential element of the charge because bare citation of the statute 'is of scant help in deciding whether the grand jury considered' the missing element in charging the defendant." *Id.* at 799–800 (quoting *United States v. Camp,* 541 F.2d 737, 740 (8th Cir.1976)). Thus, in light of the current law viewing recidivism statutes as mere sentencing enhancements, no essential element was absent from the indictment and *Olson* has no bearing on this case.

### III. Conclusion

For the reasons discussed, the conviction and sentence of the district court are AFFIRMED.

*ris,* 236 F.3d 582, 586–88 (10th Cir.2000); *United States v. Baldwin,* 186 F.3d 99, 101 (2d Cir.1999) (per curiam).