# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2405

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Janice Grant, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 10, 2008
Filed: April 23, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Janice Grant (Grant) was convicted by a jury of second degree murder in the stabbing death of her boyfriend, Erasmo Porter (Porter). During Grant's trial, the district court[1] sustained the government's gender based challenge to three of Grant's peremptory strikes, and excluded the testimony of Grant's proposed witness, Dawn Hare (Hare). Grant appeals the district court's rulings regarding the peremptory challenges and the exclusion of Hare's testimony. We affirm.

_____

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

## I. BACKGROUND

During the early morning hours of July 3, 2007, a group of people, including Grant and Porter, were gathered at Grant's mother's apartment, where Grant and Porter resided, on the Omaha Indian Reservation in Macy, Nebraska. At this time, Grant was pregnant. During the night, Grant and Porter engaged in an altercation, and Grant stabbed Porter in the chest. Porter died of the stab wound. A federal grand jury entered a two-count superseding indictment against Grant charging Grant with second degree murder in violation of 18 U.S.C. §§ 1111, 113, and 1153, and manslaughter in violation of 18 U.S.C. §§ 1112 and 1153.

Grant's trial began on December 10, 2007. At the end of voir dire, the government challenged Grant's peremptory strikes, arguing Grant's strikes established a pattern of striking jurors based on gender. After taking the position that the government could not challenge Grant's peremptory strikes based on gender,[2] Grant's counsel provided explanations for his strikes, and the government then challenged the validity of Grant's explanations. The district court sustained the government's objection to Grant's striking of Kathryn Ham (Juror Ham), Elisabeth Smith (Juror Smith), and Susan Fox (Juror Fox). The district court found Grant's counsel's non-gender based reasons were pretextual. Jurors Ham, Smith, and Fox were seated on the jury and were the only women jurors.

During trial, Grant defended the charges against her by arguing she did not intend to kill Porter and only acted in self defense. Grant contended Porter was threatening her life and the life of her unborn child during the altercation, and Porter

---

[2]Grant's counsel apparently was not aware of J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 141-43 (1994) (declaring peremptory challenges of potential jurors cannot be made solely on the basis of gender). Grant's counsel stated, "I'm not sure Batson even applies to gender, or to the government's challenges," and "it's not something I'm immediately familiar with. I am taking the position that Batson doesn't extend to gender."

had previously engaged in similar violent and threatening behavior against Grant. To support her defenses, Grant testified and called seven other witnesses to discuss Porter's prior violent and threatening actions. Grant also sought the testimony of Hare regarding a previous altercation between Grant and Porter, which Hare observed from the hallway outside Grant's apartment. The government objected to Hare's testimony as cumulative, and the district court sustained the government's objection.

The jury found Grant guilty of second degree murder, and the district court sentenced Grant to 180 months imprisonment. This appeal follows.

## II.    DISCUSSION
### A.    Peremptory Strikes

Grant first disputes the district court's review of, and ruling on, Grant's peremptory strikes of Jurors Ham, Smith, and Fox. Grant contends the district court (1) applied an improper standard to review the government's objection to Grant's peremptory strikes, and (2) erroneously sustained the government's objection to Grant's striking of Jurors Ham, Smith, and Fox.

Whether a district court applied an improper standard of review to analyze an objection to a peremptory strike is a matter of law which this court reviews de novo. See Murray v. Groose, 106 F.3d 812, 814 (8th Cir. 1997). We review a district court's rulings on objections to a peremptory strike for clear error. See United States v. Campbell, 270 F.3d 702, 706 (8th Cir. 2001) (citations omitted).

### 1.    Standard Used to Review the Government's Objection

In J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 141-43 (1994), the Supreme Court held peremptory strikes of potential jurors cannot be made solely on the basis of gender. To determine whether a gender-based peremptory strike has been made, the district court is to engage in the following three-step analysis:

1.  The party objecting to the peremptory strikes must make a prima facie case of a J.E.B. gender violation;

2.  The burden then shifts to the non-objecting party to offer a gender-neutral explanation for the strike;

3.  Once a gender-neutral explanation for the strike is given, the burden shifts back to the objecting party to prove to the district court the non-objecting party's gender-neutral explanation was pretextual.

See Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008) (citing Swope v. Razzaq, 428 F.3d 1152, 1154-55 (8th Cir. 2005) (per curiam)); see also Purkett v. Elem, 514 U.S. 765, 767 (1995).

If the non-objecting party gives an explanation which is not inherently discriminatory, a district court does not assess the persuasiveness of the non-objecting party's explanation in step two. Purkett, 514 U.S. at 768. Rather, the district court must proceed to step three to analyze the persuasiveness of the explanation and determine "whether the opponent of the strike has carried his burden of proving purposeful discrimination." Id. (citation omitted). In step three, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." Id. Thus, "a trial judge [choosing] to disbelieve a silly or superstitious reason at step three" ensures "the ultimate burden of persuasion regarding [gender] motivation rests with, and never shifts from, the [objecting party]." Id. (emphasis omitted).

The district court is not required to make specific factfindings in conducting a Batson challenge review. "A trial court's ruling on a Batson challenge is itself a factual determination." Smulls v. Roper, 535 F.3d 853, 860 (8th Cir. 2008) (en banc), cert. denied, __ S. Ct. __, No. 08-7465, 2009 WL 901551 (Apr. 6, 2009). "[F]ederal law has never required explicit fact-findings following a Batson challenge, especially

where a prima facie case is acknowledged and the [non-moving party] presents specific nondiscriminatory reasons on the record." Id.

In this case, Grant argues the district court applied an improper standard of review which failed properly to allocate the burden of proof on the government during the analysis of the government's objection. Grant asserts the district court analyzed Grant's reasons for the peremptory strikes in light of what the district court thought were reasonable explanations instead of requiring the government to meet its burden of showing Grant's explanations were pretextual. In support of this argument, Grant claims the district court placed the burden on Grant to provide "reasonable" explanations for the strikes because (1) the district court initially requested that Grant provide explanations for the strikes and said it would "determine the reasonableness for each challenge"; (2) the district court expressed subjective agreement or disagreement with the reasons offered for the strikes; and (3) the district court stated, when ruling on the government's objection, it did not believe Grant "ha[d] expressed an opinion with sufficient basis" regarding Jurors Ham, Smith, and Fox. Grant maintains the district court's language failed to allocate the burden of proof on the government and employed a "reasonableness" test, which lacked findings of credibility, gender bias, and pretext.

We disagree with Grant's contentions. After voir dire, the government made a prima facie showing of a J.E.B. gender violation when the government offered its objection to the pattern of Grant's strikes and told the district court Grant exercised ten of her eleven strikes on females. After the objection had been made, the district court stated, "I'll ask that [Grant's counsel] outline the jurors that [Grant's counsel] ha[s] challenged, and generally the reason, and then I will determine the reasonableness for each challenge." This statement temporarily shifted the burden of going forward to Grant to offer non-gender related explanations for each strike. After Grant's counsel gave his specific reasons for striking each of the ten females, the district court then shifted the burden back to the government. The district court had the government rebut

the validity of the reasons proffered by Grant's counsel for the strikes. Finally, only after hearing the government's rebuttal and giving Grant's counsel an additional opportunity to respond to the government's rebuttal, the district court made specific findings and ruled on the objection for each of the ten female jurors struck by Grant. Based on this record, we are persuaded the district court's review adequately followed the required three-step analysis and kept the ultimate burden on the government.[3]

---

[3]The dissent argues Grant was improperly allocated the burden of proof and the district court failed to proceed to step three because the government and the district court failed to address, on the record, each reason Grant's counsel offered for the strikes of Jurors Ham and Smith. The dissent's argument is misplaced. The government *did* offer argument to show Grant's reasons for striking Jurors Ham and Smith were pretextual. Even if the dissent believes the government's response was insufficient to show pretext because the government did not address all of Grant's reasons, and possibly offered wholly different reasons for showing pretext, adequacy of a rebuttal to proffered non-gender explanations is irrelevant to whether the burden was shifted to the government. The government did not have to respond to every reason offered by Grant's counsel, but rather had to offer an argument, whatever it may be, to persuade the district court that Grant's counsel's reasons were pretextual. See Barnett, 541 F.3d at 811. When the district court required the government to respond to Grant's counsel's reasons, the district court proceeded to step three and the burden was properly shifted to the government.

Further, even if preferred by this Court, the district court, in its analysis, was not required to address, explain, or make specific factfindings on each reason offered by Grant for striking Jurors Ham and Smith. See Smulls, 535 F.3d at 860 (concluding, "federal law has never required explicit fact-findings following a Batson challenge" and "[a] trial court's ruling on a Batson challenge is itself a factual determination, and we have repeatedly upheld rulings made without additional reasoning"); see also Miller-El v. Cockrell, 537 U.S. 322, 347 (2003) (stating, "[w]e adhere to the proposition that a state court need not make detailed findings addressing all the evidence before it" when ruling on a Batson challenge). Thus, the dissent's reliance on the district court omitting explanation on some of Grant's reasons is irrelevant to whether the district court properly allocated the burden.

The district court's language also did not place the determinative burden on Grant. The language to which Grant objects was used by the district court to evaluate the credibility of Grant's counsel's reasons and to explain the district court's rulings. In the context of the three-step procedure the district court employed, this language merely described the district court's determinations as to whether, in light of the government's arguments, Grant's explanations were pretextual. The record before us does not indicate the district court's language placed an erroneous burden on Grant. Therefore, we are convinced the district court correctly followed the three-step analysis and placed the ultimate burden on the government to prove Grant's strikes violated J.E.B.[4]

### 2. Objection to Jurors Ham, Smith, and Fox

Grant also contends the district court committed clear error in sustaining the government's objection to striking Jurors Ham, Smith, and Fox. Grant argues the reasons her counsel gave to the district court for the strikes of Jurors Ham, Smith, and Fox were sufficient non-gender explanations for the peremptory strikes. Grant maintains the government failed to show Grant's counsel's explanations were

---

[4]Although Grant also cites several Circuit Courts of Appeals cases in her brief, these cases are distinguishable from Grant's situation and unpersuasive in this case. In United States v. McFerron, 163 F.3d 952, 953-55 (6th Cir. 1998), the district court considered the explanations for the strikes without argument from the moving party on pretext, improperly consolidating steps two and three of the Batson analysis, and specifically stated the non-objecting party had not carried her "burden of persuasion." The district court in United States v. Serino, 163 F.3d 91, 92-93 (1st Cir. 1998), disagreed, sua sponte, with the peremptory strike rather than following the three-step analysis. The Court of Appeals in United States v. Broussard, 987 F.2d 215, 220-21 (5th Cir. 1993) (abrogated on other grounds by J.E.B.), specifically stated the district court required a "good reason" for the challenge rather than a facially neutral explanation. And, the issue in United States v. Annigoni, 96 F.3d 1132, 1136 (9th Cir. 1996) (en banc), was whether "a harmless-error analysis is the appropriate standard to use in reviewing the erroneous deprivation of a defendant's right of peremptory challenge," not whether the district court engaged in an improper analysis.

pretextual, and the district court did not make sufficient credibility and factual findings to warrant denying Grant's peremptory strikes of Jurors Ham, Smith, and Fox.

The determinations made by a district court during review of an objection to gender-based peremptory challenges are primarily based on the district court's "assessment of credibility and demeanor." United States v. Jones, 245 F.3d 990, 993 (8th Cir. 2001). Thus, the district court's rulings should be given great deference. See United States v. Roebke, 333 F.3d 911, 912 (8th Cir. 2003) (citation omitted).

### a. Juror Ham

Grant's counsel stated he struck Juror Ham because she had not returned a juror questionnaire, was divorced, and seemed to react negatively to a discussion of the issues which would be presented at trial. The government rebutted these reasons by noting Grant's counsel had not asked Juror Ham any questions during voir dire, and there were men on the jury who were divorced, but not stricken by Grant. In its explanation for its ruling, the district court stated it "agree[d] with the government," and noted (1) Juror Ham had not been asked any questions by either party during voir dire, and (2) Grant did not strike divorced men, or other divorced women, on the jury panel.

The district court did not clearly err in sustaining the government's objection to Juror Ham. The district court was within its broad discretion to determine Grant's counsel's explanations were pretextual and not credible when male divorced jurors were not struck and Juror Ham was not asked any questions during voir dire. See Davidson v. Harris, 30 F.3d 963, 965-66 (8th Cir. 1994) (holding a defendant's explanation for striking an African American venire member was pretextual because

the defendant failed to strike similarly situated white venire members and did not ask the African American venire member any questions during voir dire).[5]

### b.    Juror Smith

Grant's counsel explained he struck Juror Smith because research before trial revealed Juror Smith had possible ties to conservative regions of the southern United States, graduated from a Christian high school, and was married to a manager of a jewelry store. The government rebutted this explanation by noting Juror Smith was not asked any questions during voir dire. In ruling on Juror Smith, the district court stated, "With respect to [Juror] Smith, I don't buy ties to the southern part of the United States. She was not even talked to by anybody, so I'm going to sustain the government's objection to [Juror] Smith."

The district court's ruling was not clearly erroneous. The district court found Grant's counsel's explanation regarding Juror Smith's connection to the southern United States was not credible. On the record before us, there is nothing to suggest this determination of credibility was clearly erroneous. See Jones, 245 F.3d at 993 (ruling a district court's determination of credibility of a reason for a peremptory strike is a primary factor in reviewing an objection to a peremptory strike). Further, the failure of Grant's counsel to ask Juror Smith any questions during voir dire substantiates the district court's ruling.[6] See Davidson, 30 F.3d at 966.

---

[5]The dissent contends the district court erred because it "failed to conduct a complete Batson analysis of several of the reasons offered by defense counsel." Specifically as to Juror Ham, the dissent argues the district court failed to address, on the record, Juror Ham's demeanor and failure to return the juror questionnaire. The dissent's concern is unnecessary. The district court's analysis did not have to address, or make specific factfindings on, all of Grant's counsel's reasons for striking Juror Ham. See Smulls, 535 F.3d at 860.

[6]The dissent asserts the district court also did not do "a complete Batson analysis" on Juror Smith because the district court did not sufficiently address every

### c.      Juror Fox

Grant's counsel said he struck Juror Fox because Juror Fox was from Columbus, Nebraska, which in Grant's counsel's perception, has a low minority population. Grant's counsel also noted Juror Fox was divorced.  The government rebutted these reasons by noting (1) Juror Fox was not asked any questions during voir dire, (2) Columbus has a meat packing plant, which in the government's view, employed a significant number of Hispanics, and (3) divorced males were not stricken by Grant's counsel.

Based on the reasons given by Grant's counsel and the government's rebuttal, the district court did not clearly err in sustaining the government's objection to Juror Fox.  The district court noted Juror Fox was not asked any questions during voir dire. See id. at 966.  The district court also found Grant's counsel's argument about a low minority population in Columbus was not credible, because the district court agreed with the government that Columbus has a meat packing plant which employs a significant number of Hispanics, and almost every county in Nebraska has a low Native American population.  See Jones, 245 F.3d at 993.  Finally, the district court had found other similarly situated male venire members were not stricken by Grant because divorced males, and a male from Columbus, were left on the panel.  See Davidson, 30 F.3d at 965 ("[I]n this circuit, it is well established that [a litigant] may not justify peremptory challenges to venire members of one race unless venire members of another race with comparable or similar characteristics are also challenged." (internal quotations omitted)).

_____

reason Grant's counsel gave for striking Juror Smith.  The district court was not required to make specific factfindings, or provide explanation, on each reason offered by Grant's counsel.  See Smulls, 535 F.3d at 860.

### d. Conclusion

We further emphasize a district court's ruling in an alleged J.E.B. violation is substantially based on the district court's assessment of credibility, and that ruling should be given a high level of deference. See Batson v. Kentucky, 476 U.S. 79, 98 n.21 (1986) ("Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."). For an example here, the district court's "not buying" Grant's counsel's reasons for striking Juror Smith is a credibility finding to which this court should give deference. This deference is further amplified in this case where Grant's counsel initially was apparently not familiar with J.E.B., and took the position that exercising peremptory strikes based on gender was not a constitutional violation. This unfamiliarity with the law and Grant's counsel's declared position reasonably heightened the district court's concern that a J.E.B. violation may have occurred.

We further recognize the district court rejected seven of the government's gender challenges. The district court explained in conclusion, "one of the primary reasons for my concern here is that there were no questions asked of any . . . of these three jurors."[7] On the record before us, the district court was within its significant discretion to sustain the government's objections to Grant striking Jurors Ham, Smith, and Fox, allowing these three women to sit on an otherwise all male jury.

### B. Exclusion of Hare's Testimony

Grant's final contention on appeal is the district court erred in excluding Hare's testimony as cumulative. Grant argues the "center piece of the trial" was Grant's

---

[7]The dissent relates Grant's appellate argument that Jurors Ham, Smith, and Fox were not asked any questions, in part, due to the time limits the district court placed on voir dire. At trial, Grant's counsel announced to the district court, "You, not unreasonably, set time limits concerning the examination of jurors. I might add you are a whole lot more generous than some of the other judges in this building."

credibility regarding her self defense claim. Grant maintains the district court denied Grant her Fifth and Sixth Amendment rights to present a complete defense when Hare's testimony was excluded, because "Hare's testimony would have given the jury a concrete example of Porter blocking Grant's exit to corroborate Grant's testimony that she had the very same perception when the knife was in her hand on the night of Porter's death."

We review "evidentiary rulings of a district court only for abuses of discretion, and will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict." United States v. Ballew, 40 F.3d 936, 941 (8th Cir. 1994) (citation omitted). Under Federal Rule of Evidence 403, a district court can exclude otherwise relevant evidence if the "probative value [of the evidence] is substantially outweighed by the . . . needless presentation of cumulative evidence."

At trial, Grant provided the following offer of proof regarding Hare's testimony:

> She is going to testify that in the cold weather months of fall 2006 she went to this apartment to deliver some household goods to Ms. Grant, basically just being nice, providing some household goods. That she then, as she approached their apartment, found Mr. Porter blocking the door. There was a violent exchange that she witnessed in terms of him screaming, glass breaking. She hiked down the hall because she is afraid, but yet is concerned about what is going on. Later she observes Mr. Porter leave. Once she is satisfied the coast is clear she whispers to Ms. Grant, Ms. Grant comes out, and she then drove Ms. Grant to a shelter that she is familiar with a few blocks away in Sioux City.

Grant expanded on this offer of proof later by summarizing Hare's testimony as,

> She sees Mr. Porter, she knows Mr. Porter, she sees Mr. Porter blocking the door. She hears him screaming. She hears glass breaking. That's as

-12-

far as her testimony can go. She's not going to say that she saw physical blows, but she is going to testify the door is open, the door is blocked, there's screaming and there's glass breaking.

In sustaining the objection to Hare's testimony, the district court stated, "there is no indicia of actual violence that night" and there was "enough testimony" on the subject, and determined Hare's testimony would be "generally cumulative and doesn't have to do with a specific act of violence against [Grant]." This was not an abuse of discretion. Grant elicited the testimony of seven other witnesses regarding incidents of prior violent behavior by Porter towards Grant, and Grant testified as to her state of mind on the night she stabbed Porter. The jury was sufficiently apprised of Grant's theory. Further, Grant did not testify to this incident when she had the opportunity, and failed to show Hare was the only witness who could testify about the incident where Porter blocked Grant's exit. See United States v. Willis, 277 F.3d 1026, 1033 (8th Cir. 2002) (holding a district court was within its discretion to exclude evidence as cumulative when the evidence did not provide new insight beyond the previously admitted evidence). Thus, the district court was within its considerable discretion to exclude Hare's testimony as cumulative.

## III. CONCLUSION

The district court's judgment is affirmed.

BYE, Circuit Judge, concurring in part and dissenting in part.

The majority holds the district court properly sustained the government's objections to Janice Grant's peremptory strikes of jurors Kathryn Ham, Elisabeth Smith, and Susan Fox. Because the district court applied an improper standard when evaluating the strikes, and erroneously sustained the government's objections as to jurors Ham and Smith, I respectfully dissent. I concur in the result with respect to juror Fox, and join the majority's opinion affirming the exclusion of Dawn Hare's testimony.

During jury selection, Grant exercised nine of her ten peremptory challenges to remove women from the jury.[8] The government objected, arguing Grant exercised the challenges on the basis of gender, in violation of the principles announced in Batson v. Kentucky, 476 U.S. 79 (1986). After concluding the government had stated a prima facie Batson violation, the district court told defense counsel: "And so I'll ask that you outline the jurors that you have challenged, and generally the reason, and then I will determine the reasonableness for each challenge."

After defense counsel stated his reasons for striking the jurors, the court focused its attention on the challenges exercised against jurors Smith, Fox, Ham, and Joan Pearson. As to those four, counsel's reasons for striking the jurors can be summarized as follows:

> Smith: Substantial ties to the south giving rise to possible socioeconomic and racial overtones. A conservative educational background with the possibility of extremely conservative views. Husband managed a jewelry store and family was financially well off.
>
> Fox: Resided in a small Nebraska community with a small minority population and would not relate to a minority defendant. Divorced.
>
> Ham: Did not complete the pre-mailed juror questionnaire and counsel had no information from any other source, e.g., internet searches, about Ham. Demeanor suggested she reacted negatively when the jury was told the case involved issues of domestic violence, alcohol and drug use/abuse. Divorced.
>
> Pearson: Negative body language. Elementary school teacher.

---

[8]Grant also struck one female alternate juror but the government withdrew its objection to the alternate.

-14-

In response, the government noted Smith, Fox, Ham, and Pearson had not been asked any questions.[9] As to Fox and Ham, the government noted divorced male jurors had not been struck. As to Fox, the government claimed the community where she lived boasted a meat packing plant which employed a large contingent of Hispanic workers, and male jurors from the same community had not been struck. The government offered no additional argument against defense counsel's proffered reasons for striking Smith and Pearson.

The court overruled the objection as to Pearson, noting that although she was not questioned, "I have a bias on school teachers, so I'm going to let you strike all the school teachers . . . ."

As to Ham, the court rejected her status as a divorcee as a basis for the strike, noting divorced males were not struck. It noted counsel was also relying on Ham's demeanor, but failed to make any findings or to further address the claim. Finally, the court omitted any discussion of Ham's failure to complete and return the court's juror questionnaire.

Next, despite the government's failure to address any of defense counsel's reasons for striking Smith, the court upheld the objection, stating: "With respect to Elizabeth Smith, I don't buy ties to the southern part of the United States. She was not even talked to by anybody . . . ." The court failed to address defense counsel's other stated reasons for striking Smith, i.e., conservative views, attendance at a conservative high school, husband's occupation or the family's financial status. The court also failed to explain how not questioning Smith rendered the stated reasons pretextual, when the failure to question Pearson did not.

---

[9]The district court conducted its own voir dire and then allowed counsel limited time to ask additional questions. The four jurors were not asked questions by counsel but presumably were questioned by the court.

Finally, the court sustained the objection as to Fox, finding she resided in a community with a significant Hispanic/minority community, and divorced males as well as males from the same community on the jury had not been struck.

The district court concluded by stating: "I also have to say that one of the primary reasons for my concern here is that there were no questions asked of any of the three, of these three jurors." Defense counsel explained his reasons for not questioning all the jurors, indicating the court offered the parties limited time to personally conduct voir dire, and much non-verbal information was gained by observing potential jurors. At no point did the district court elaborate on why the failure of counsel to ask specific jurors questions was germane to the Batson analysis.

Grant argues the district court misapplied Batson by requiring her to prove the challenges were reasonable, instead of requiring the government to prove purposeful discrimination, and clearly erred in concluding her challenges were a pretense for gender discrimination.

The Equal Protection Clause of the United States Constitution prohibits using peremptory challenges to exclude jurors on the basis of race, Batson, 476 U.S. at 89, and in J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 141-42 (1994), the prohibition was extended to gender-based challenges. To prove purposeful discrimination in the use of a peremptory challenge, the party opposing the strike must first make a prima facie case of impermissible discrimination. If such showing is made, the proponent of the strike must suggest a gender-neutral explanation. At the second step, the reason given does not have to be persuasive or even plausible. "'[T]he issue is the facial validity of the . . . explanation. Unless a discriminatory intent is inherent in the . . . explanation, the reason offered will be deemed [gender] neutral.'" Purkett v. Elem, 514 U.S. 765, 768 (1995) (quoting Hernandez v. New York, 500 U.S. 352 (1991)). If a gender-neutral explanation is offered, the trial court must decide whether the party

-16-

objecting to the strike has proved purposeful discrimination. Elem, 514 U.S. at 767; United States v. Jones, 245 F.3d 990, 992 (8th Cir. 2001).

Typically, once the party making the peremptory challenge states a gender-neutral reason under the second part of Batson, the opposing party "may then attempt to prove the facially valid reason is mere pretext and that the real reason for the strike was discrimination." United States v. Elliott, 89 F.3d 1360, 1365 (8th Cir. 1996) (citing Elem, 514 U.S. at 767). "[T]he ultimate burden of persuasion regarding [discriminatory] motivation rests with, and never shifts from, the opponent of the strike." Moran v. Clarke, 443 F.3d 646, 652 (8th Cir. 2006) (quoting Elem, 514 U.S. at 768).

This court has emphasized the need to "make[] detailed findings on the record in support of a ruling on a peremptory challenge under Batson." Id., at 653 (citing U.S. Xpress Enter., Inc., v. J.B. Hunt Transp., Inc., 320 F3d 809, 814 (8th Cir. 2003)). Such view is entirely consistent with Supreme Court precedent stressing the importance for trial courts to carefully consider all evidence bearing on the issue. See Batson, 476 U.S. at 96 ("In deciding whether the defendant has made the requisite [prima facie] showing, the trial court should consider all relevant circumstances."). As to the issue of discriminatory intent – the third step in a Batson challenge, "Batson . . . requires the judge to assess the plausibility of [the striking party's] reason in light of all evidence with a bearing on it." Miller-El v. Dretke, 125 S. Ct. 2317, 2331-32 (2005) (citation omitted). "In deciding if the defendant has carried his burden of persuasion, a court must undertake a 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" Batson, 476 U.S. at 93 (quoting Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 266 (1977)).

Grant argues the district court's analysis of the Batson challenges placed an impermissible burden on her. She contends the court correctly required her to articulate non-discriminatory reasons for the strikes, but, instead of then requiring the

-17-

government to prove pretext or purposeful discrimination, it required Grant to prove the strikes were objectively reasonable. In support of her argument, Grant focuses on two statements the court made during its discussion of the <u>Batson</u> challenges. First, after determining the government met its burden under step one to make a prima facie showing of discrimination, the court directed defense counsel to "outline the jurors that you have challenged, and generally the reason, *and then I will determine the reasonableness for each challenge*." Next, Grant cites the court's discussion of juror Smith, where it simply stated: "With respect to Elizabeth Smith, I don't buy ties to the southern part of the United States."

"The Supreme Court has explained that when it established the requirement that the proponent of a strike give a 'clear and reasonably specific' explanation of the legitimate reasons for exercising a peremptory challenge, <u>Batson</u>, 476 U.S. at 98, it was not requiring 'a reason that makes sense, but a reason that does not deny equal protection.' <u>Purkett</u>, 514 U.S. at 769." <u>United States v. McFerron</u>, 163 F.3d 952, 955 (6th Cir. 1998). Therefore, the proffered reasons need not be "persuasive" or even "plausible," and a trial court errs by requiring the proponent of the strike to prove the reasons are reasonable or persuasive. <u>Id.</u>

In <u>McFerron</u>, as in this case, the government objected, on the basis of gender, to several peremptory challenges exercised by defense counsel. <u>Id.</u> at 953. The trial court then called upon defense counsel to provide non-discriminatory explanations for the strikes. <u>Id.</u> In sustaining the government's <u>Batson</u> challenge, the district court characterized the defense's various reasons as "not very persuasive" and insufficient to carry the defendant's "burden of persuasion." <u>Id.</u> at 953-54. On appeal, the Sixth Circuit concluded "the district court erred . . . by consolidating the second and third steps of the <u>Batson</u> analysis and imposing the burden of persuasion on [defendant]." <u>Id.</u> at 955. "Only when deciding whether the opponent of the strike has proved purposeful discrimination may a court consider the persuasiveness of the purported

justification and choose to disregard an explanation that is, for example, implausible, silly or superstitious and may thus be a pretext for purposeful discrimination." Id.

Here, the district court allowed the government to offer arguments in favor of finding purposeful discrimination, but those arguments failed to address many of the defendant's stated reasons. For example, in addition to striking Ham because she was divorced, defense counsel offered her demeanor and failure to complete and submit the court's juror questionnaire as additional bases. See, e.g., United States v. Coleman, 52 F.3d 743, 746 (8th Cir. 1995) (upholding government's use of peremptory challenge based on belief jurors were disinterested). The government offered no evidence or argument to refute those additional facially neutral reasons. And in concluding defense counsel failed to offer a "reasonable" basis for the challenge, the district court merely mentioned counsel's reliance on demeanor, but made no findings and offered no analysis of the issue. As for her apparent disinterest, as reflected by her failure to complete the questionnaire, the court omitted any discussion of the reason whatsoever.

The majority correctly points out that the government rebutted one of defense counsel's stated reasons by demonstrating divorced male jurors were not struck. If this was the only reason offered for striking juror Ham, I would affirm the district court. What the majority fails to adequately explain is the government's failure to rebut, and the district court's failure to address, defense counsel's additional non-discriminatory reasons. The government does not dispute the factual bases for the strike, i.e., Ham's failure to complete the juror questionnaire and defense counsel's observations of her demeanor. Additionally, the district court made no contrary findings; it simply omitted any reference to either of these additional reasons in sustaining the government's objection. To the extent the majority acknowledges these additional reasons, it apparently concludes the district court reasonably concluded the failure to ask Ham any questions rendered the reasons pretextual. In so holding, the majority ignores the district court's willingness to overlook the failure to question juror Pearson, when it

-19-

concluded the reason proffered for striking her was reasonable because it too "ha[d] bias on school teachers."

The same is true of Smith. Defense counsel offered several non-discriminatory reasons for the strike, i.e., conservative views, conservative education, husband's profession, and the family's financial status. The government failed to offer any argument suggesting the reasons were not gender neutral or evidence calling the factual bases for them into question. The district court's analysis simply concluded the court did not "buy ties to the southern part of the United States[,]" and the other facially neutral reasons were ignored. In other words, without requiring any meaningful argument from the government, the district court concluded the strike was unreasonable.

The error in the district court's analysis is two-fold. First, the court expressly stated it was requiring defense counsel to shoulder the burden of proving the "reasonableness for each challenge." The district court's improper allocation of the burden of proof is evidenced by its failure to proceed to step three, thereby obviating any requirement the government meet its burden of proving purposeful discrimination. Several valid facially neutral reasons were offered for striking Ham and Smith, to which the government failed to respond. Without requiring any response from the government, and without ever mentioning those asserted bases, the district court simply concluded defense counsel's reasons were unreasonable. See United States v. Carr, 67 F.3d 171, 176 (8th Cir. 1995) (overruling Batson challenge where government offered non-discriminatory reasons for the strike and the defense "did not attempt to persuade the district court that the government's reasons were pretextual.").

The majority dismisses McFerron as inapposite, because the district court there specifically stated the defense had not carried its burden of persuasion. In this case, the district court stated it would determine whether Grant's stated reasons were reasonable, and without input or argument from the government, found them

unreasonable. Thus, it is clear the district court placed the burden of proof on Grant, and the majority's attempt to distinguish McFerron fails.

Second, even assuming the court did not improperly place the burden of proof on Grant, the transcript demonstrates it failed to conduct a complete Batson analysis of several of the reasons offered by defense counsel. As noted above, numerous facially valid reasons were given for striking Ham and Smith, which were never mentioned or analyzed by the district court. Remarkably, the majority concludes

> The district court had the government rebut the validity of the reasons proffered by Grant's counsel for the strikes. Finally, only after hearing the government's rebuttal and giving Grant's counsel an additional opportunity to respond . . . the district court made specific findings and ruled on the objection for each of the . . . jurors struck by Grant.

My review of the record discloses the opposite is true. The transcript demonstrates the government failed to respond to many of the stated reasons for striking Ham and Smith, and, contrary to repeated admonitions by this court directing district court's to make detailed findings explaining decisions on Batson challenges, the district court made no findings and conducted no analyses of those reasons.

The majority omits any reference to the government's and district court's failure to address several facially valid reasons offered for striking Ham and Smith. Instead, it concludes "the failure of Grant's counsel to ask [the jurors] any questions during voir dire substantiates the district court's ruling." I find this reasoning singularly unsatisfying and hopelessly unconvincing. Four jurors, one of them a school teacher, were not questioned. As to Ham, Fox, and Smith, the court stated the lack of questioning was a "primary" reason for finding the strikes discriminatory. As to the unquestioned teacher, however, the court readily denied the government's objection because it shared defense counsel's "bias" against teachers. In other words, it was

unnecessary to question the teacher because the district court's shared bias made the strike reasonable.  This is not the analysis required by <u>Batson</u>.

The record demonstrates Grant offered numerous facially valid reasons for striking jurors Ham and Smith, but the district court improperly placed the burden of proof on her or failed to analyze several of the reasons.  While <u>Batson</u> affords district courts broad discretion when ruling on such objections, today's decision establishes as the law of this circuit the principle that a failure to ask a juror questions renders a strike supported by non-discriminatory reasons presumptively pretextual.  Nothing in <u>Batson</u> and subsequent cases supports such a rule.  Accordingly, I respectfully dissent from the majority's opinion affirming the district court's <u>Batson</u> ruling with respect to jurors Ham and Smith.  I concur in the result as to juror Fox, and concur in the majority's decision affirming the exclusion of Dawn Hare's testimony.

_____